**Elsaesser v.
Hamilton Bd. of Zoning Appeals**
*[Cite as 7 AOA 526]*

*Case No. CA90-03-052*
*Butler County, (12th)*
*Decided October 29, 1990*

*R. T. Rogers, P. O. Box 1240, Hamilton, Ohio 45012, for Plaintiff-Appellant.*

*Lester W. Koehler, Hamilton City Law Director, Gary L. Sheets, Hamilton City Building, Hamilton, Ohio 45011, for Defendant-Appellee.*

*Per Curiam.*

Plaintiff-appellant, Susan Marie Elsaesser, appeals a decision of the Butler County Court of Common Pleas which affirmed a decision of defendant-appellee, City of Hamilton Board of Zoning Appeals, that three crosses erected in appellant's front yard violated the thirty-foot setback requirement of the Hamilton Zoning Ordinance.

In January 1989, appellant's husband, Jack Elsaesser, arranged to have three crosses erected in front of the Elsaesser residence on New London Road in the city of Hamilton. The crosses, which were blue and gold and ranged in height from twelve to sixteen feet, were located approximately six feet from the edge of the New London Road right of way. The Elsaessers, who are deeply religious people, erected the crosses as a memorial to the death and resurrection of Jesus Christ.

After receiving a complaint about the crosses, the then Hamilton Building and Zoning Administrator, Walter Geib, conducted an investigation. After discovering appellant was the record owner of the property, he sent her a letter informing her that the crosses were "structures" as defined in the Hamilton Zoning Ordinance and that they violated a thirty-foot front yard setback requirement imposed on all R-1 residential lots. Geib ordered appellant to remove the crosses within fifteen days.

Appellant appealed Geib's order to the city of Hamilton Board of Zoning Appeals. At a hearing held on April 5, 1989, appellant contended that the crosses were a monument which, under the provisions of the zoning ordinance, were exempt from some restrictions. The board voted to affirm Geib's order.

Appellant appealed the board's decision to the Butler County Court of Common Pleas. She contended:

(1) that the crosses were not "structures" as defined in the zoning ordinance;

(2) that if the crosses were structures, that they were exempt from any front yard height restrictions because they were a "monument"; and

(3) that the city's enforcement of the zoning ordinance violated her rights to equal protection of the laws and freedom of religion as protected by the United States and Ohio Constitutions.

The court of common pleas affirmed the board's decision. In a written opinion, the court concluded that the crosses were "structures" as that term is defined in the zoning ordinance because they were constructed and permanently buried in the ground. It found that appellant's contention that the crosses were a "monument" lacked merit because, even if the crosses were a monument and therefore exempt from the height restrictions, there was no "memorial" exception to the front yard setback requirement. This appeal followed.

Appellant presents three assignments of error for review. In her first assignment of error, she states that the court erred by finding there is no "memorial" exception to the front yard setback requirement in the zoning ordinance. She argues that the crosses are monuments and that the court misconstrued the zoning ordinance. We find this assignment of error is not well-taken.

Section 1115.51 of the zoning ordinance imposes a general height limitation of two and one-half stories or thirty feet for all R-1 residential properties. Appellant relies on sections 1131.20 and 1131.21 which state that "height limitations [are] not applicable" to "monuments" and certain other structures. Our reading of the zoning ordinance as a whole convinces us that these sections exempt monuments from the general height restriction provided for in section 1115.51. They do not exempt monuments from all other restrictions on R-1 residential property. Section 1115.54, not 1115.51, establishes front, back and side yard requirements for R-1 residential districts. For structures ranging from one to two and one-half stories, it imposes a thirty-foot setback requirement for front yards. The height exemptions relied on by appellant do not apply to this setback requirement.

Section 1108.00 of the zoning ordinance defines "yard" and "front yard" as follows:

*"YARD*: A REQUIRED OPEN SPACE UNOCCUPIED AND UNOBSTRUCTED BY ANY STRUCTURE OR PORTION OF A STRUCTURE FROM THIRTY (30) INCHES ABOVE THE GENERAL GROUND LEVEL OF THE GRADED LOT UPWARD, PROVIDED HOWEVER, THAT FENCES, WALLS, LIGHTING STANDARDS, STATUE-LIKE OBJECTS AND VEGETATION MAY BE PERMITTED IN ANY YARD SUBJECT TO HEIGHT LIMITATIONS AS HEREINAFTER INDICATED.

*"YARD, FRONT*: A YARD EXTENDING BETWEEN LOT LINES WHICH INTERSECT

A STREET LINE, THE DEPTH OF WHICH IS THE HORIZONTAL DISTANCE BETWEEN THE STREET RIGHT-OF-WAY LINES AND A LINE ON THE LOT WHICH IS AT ALL POINTS EQUIDISTANT FROM AND PARALLEL TO THE STREET RIGHT-OF-WAY LINE."

As can be seen from these definitions, a yard is generally considered to be an open, unoccupied and unobstructed space subject to a few well-defined exceptions. The definition of yard provides no authorization for the erection of monuments or memorials in the front yards of residences in an R-1 residential district. Simply because a monument is exempt from the general height limitations does not mean it is an unregulated permissible front yard structure. These definitions clearly indicate it is not. Accordingly, we find that the trial court did not err in ruling that there is no memorial exemption to the thirty-foot setback requirement. Appellant's first assignment of error is overruled.

In her second assignment of error, appellant states that the trial court erred in finding that there was substantial reliable probative evidence showing that the crosses are structures. She argues that there was no evidence to show that they were permanently affixed to the ground. We find this assignment of error is not well-taken.

The role of the court of common pleas in an appeal from a decision of an administrative agency is limited to determining whether the agency's decision is supported by a preponderance of substantial reliable probative evidence. R.C. 2506.04; *Budd Co. v. Mercer* (1984), 14 Ohio App. 3d 269, 273; *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App. 3d 159, 161. In undertaking this review, "the court of common pleas must give due deference to the agency's resolution of evidentiary conflicts *** and the court may not, especially in areas of administrative expertise, blatantly substitute its judgment for that of the agency." *Budd Co., supra*, at 273-74. In reviewing the decision of the court of common pleas, an appellate court is limited to determining whether the court of common pleas abused its discretion.

*Angelkovski, supra*, at 161. Therefore, we must decide whether, as a matter of law, a preponderance of substantial, reliable, probative evidence exists to support the board's decision. *Budd Co., supra*, at 274.

Section 1108.00 of the zoning ordinance defines "structure" as follows:

"Anything constructed or erected, the use of which requires permanent location on the ground or which is attached to something having a permanent location on the ground."

Appellant contends that because the crosses are not set in concrete or set on a foundation affixed to the property, they are not permanent. We disagree. The zoning ordinance does not define the term "permanent." Webster's Third New International Dictionary defines "permanent" to mean "continuing or enduring (as in the same state, situs, place) without fundamental or marked change *** fixed or intended to be fixed ***." The evidence shows that the crosses were buried in the ground with the intention that they would withstand the elements and remain a monument to Christ for an indefinite period. They were not placed on the ground, but were buried in the ground to a sufficient depth to support their considerable height. It is clear that appellant and her husband intended the crosses to be an enduring monument and that they were fixed in place.

Appellant relies upon *Sylvester v. Howland Twp. Bd. of Zoning Appeals* (1986), 34 Ohio App. 3d 270, as supporting her position. To the contrary, we find this case in actuality supports the trial court's decision. In *Sylvester,* a property owner sought a zoning certificate to place a mobile home on a concrete block foundation on her property. She contended that it was a permanent structure. The board of zoning appeals contended that a mobile home was just that, mobile, and could not be placed on the property. The Trumbull County Court of Appeals concluded that in determining whether or not the mobile home was a permanent structure, it was necessary to determine its condition at the situs of the property, and not upon its condition at some prior time. The court concluded that because the mobile home was affixed and because its wheels and axles were removed, it was no longer movable and constituted a permanent structure. *Id.* at 271-72.

In applying *Sylvester* to the case at bar, the trial court concluded "*** the crosses were certainly personal property, mobile in character, and not a structure, *until* they were erected at their permanent situs. At such time as these crosses were buried into the ground, [at] a sufficient depth to contain their 12 to 17 foot

heights, their mobility ceased, and their character was transferred into a structure upon the real estate of the appellant. Most certainly, we cannot deny that these crosses were 'attached' to the real estate." (Emphasis in original.) We agree with the trial court's analysis. We find that there was substantial reliable probative evidence to support the board's decision that the crosses were structures as defined by the zoning ordinance. Accordingly, appellant's second assignment of error is overruled.

In her third assignment of error, appellant states that the trial court erred in finding that there was substantial reliable and probative evidence to support the conclusion that the enforcement of the zoning ordinance did not violate her rights to equal protection and freedom of religion. She argues essentially that she was a victim of selective enforcement. We find this assignment of error is not well-taken.

If a law, while fair on its face, is applied so as "to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, there is a denial of equal protection ***." *State v. Flynt* (1980), 63 Ohio St. 2d 132, 134, quoting *Yick Wo v. Hopkins* (1886), 6 S.Ct. 1063, 1073, 118 U.S. 356, 373-74. However, the conscious exercise of some selectivity in enforcement does not, in and of itself, violate the right to equal protection. In *Flynt, supra,* the Ohio Supreme Court stated:

"'To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie,* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.,* based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as 'intentional and purposeful discrimination.'

"***"

*Id.* at 134, quoting *United States v. Berrios* (C.A.2, 1974), 501 F.2d 1207, 1211; see also, *State v. Freeman* (1985), 20 Ohio St. 3d 55, 58.

Appellant has failed to meet her burden of showing intentional and purposeful discrimination. In support of her claim for selective enforcement, appellant presented evidence that some residents in R-1 districts have placed basketball hoops adjacent to their driveways in violation of the thirty-foot front yard setback requirement but that no action had been taken against them. Geib conceded that these violations were not being enforced. He indicated that the city of Hamilton follows a complaint-only enforcement policy. He stated that he had never received a complaint about basketball hoops and had therefore never taken action against them. He did receive a complaint about the crosses. Evidence at the hearing showed that the section of New London Road on which appellant's residence is located contains two intersections with other streets and a crosswalk leading to a park where children play. The city of Hamilton presented evidence that the crosses were a safety hazard because drivers were looking at the crosses and not at the road in front of them.

The burden of showing discriminatory enforcement is a heavy one and is not satisfied by a mere showing that others similarly situated have not been prosecuted. *Freeman, supra,* at 58. A complaint-only enforcement policy is not *per se* unconstitutional. *Whitehall v. Moling* (1987), 40 Ohio App. 3d 66, 71. While a complaint-only policy may potentially lead to a situation where officials became so influenced by private concerns that equal protection is violated, *Id.,* the "mere existence of a potential discriminatory purpose is insufficient to show that such purpose motivated the selection of appellants for prosecution." *Freeman, supra,* at 58. The evidence in this case falls short of establishing that a complaint-only enforcement policy resulted in invidious discrimination.

Appellant contends that invidious discrimination "can and should be inferred when religious freedoms are involved." However, she cites no authority for this proposition. To the contrary, the Ohio Supreme Court has applied the *Flynt* analysis, including the provision that the burden remains on the party seeking to show discrimination, in a freedom of religion case. In *State, ex rel. Nagle, v. Olin* (1980), 64 Ohio St. 2d 341, the defendant claimed that compulsory school attendance laws violated his right to freedom of religion. He also alleged that he had been a victim of selective prosecution because other parents sending their children to non-chartered religious schools had not been prosecuted. In rejecting this argument, the court specifically stated that "[i]t will not be presumed that a prosecutor's decision to prosecute has been invidious or in bad faith." *Id.* at 347.

Appellant's claim that the enforcement of the zoning ordinance violates her freedom of religion is also without merit. The Freedom of Religion Clause embraces two concepts, freedom to believe and freedom to act. The freedom to believe is absolute; the freedom to act is not. *Cantwell v. Connecticut* (1940), 310 U.S. 296, 303-04, 60 S.Ct. 900, 903; *State v. Biddings* (1988), 49 Ohio App. 3d 83, 85. "Conduct remains subject to regulation for the protection of society. The freedom to act must have appropriate definition to preserve the enforcement of that protection." *Cantwell, supra,* at 304, 60 S.Ct. at 903. In its latest decision on freedom of religion, the United States Supreme Court stated:

"*** We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate. On the contrary, the record of more than a century of our free exercise jurisprudence contradicts that proposition. ***

"***

"[Supreme Court] decisions have consistently held that the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).' *United States v. Lee,* 455 U.S. 252, 263, n. 3, 102 S.Ct. 1051, 1058, n. 3, 71 L.Ed.2 127 (1982), (STEVENS, J., concurring in judgment); ***." *Department of Human Resources of Oregon v. Smith* (1990), ___ U.S. ___, 110 S.Ct. 1595, 1600.

Appellant's freedom to believe as she chooses has not been abridged. The zoning ordinance burdens only her religious conduct. The zoning ordinance is a valid content-neutral law of general applicability designed to assure public safety and maintain aesthetic standards. Further, the zoning ordinance imposes only minimal restraint upon appellant's conduct. She is free to erect the crosses anywhere in the front of her house except within the first thirty feet of her front yard. She has ample opportunity to present her religious message to the public within the provisions of the zoning ordinance. While the evidence revealed that it may be somewhat inconvenient to move the crosses, inconvenient burdens on religious freedom "do not rise to a constitutionally impermissible infringement of free exercise." *Lakewood, Ohio*

*Congregation of Jehovah's Witnesses v. Lakewood* (C.A.6, 1983), 699 F.2d 303, 306, certiorari denied (1983), 464 U.S. 815, 104 S.Ct. 72. Accordingly, appellant's third assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

JONES, P.J., HENDRICKSON and KOEHLER, J.J., concur.