**AMEIGH et al., Appellees,**

v.

**BAYCLIFFS CORPORATION et al., Appellants.**

[Cite as *Ameigh v. Baycliffs Corp.* (1998), 127 Ohio App.3d 254.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–95–049.

Decided April 17, 1998.

*Steven R. Smith, Janine T. Avila* and *George C. Wilber,* for appellees.

*John D. Brown, Robert A. Brindza* and *John A. Kocher,* for appellants.

Melvin L. Resnick, Judge.

This case is before the court on remand from the Supreme Court of Ohio. See *Ameigh v. Baycliffs Corp.* (1998), 81 Ohio St.3d 247, 251, 690 N.E.2d 872, 875–876.

In *Ameigh v. Baycliffs Corp.* (Apr. 12, 1996), Ottawa App. No. OT–95–049, unreported, 1996 WL 168627, this court determined that appellees' declaratory judgment action and request for an injunction were barred by the doctrine of *res judicata* and the terms of R.C. 519.24. We therefore found the first assignment of error asserted by appellants, J.I. Development Corporation, Inc. and its successor in interest, Baycliffs Corporation, Inc. ("Baycliffs"), well taken. Because of our disposition of this assignment of error, we concluded that we need not reach the merits of the second assignment of error.

Appellees, Ronald and Luz Ameigh, Richard and Marlene Holkovic, Ronald and Julia Doll, Kenneth Szostek, and Johnson's Island Property Owners Association ("property owners"), appealed that judgment to the Ohio Supreme Court. A majority of the Justices of the Supreme Court reversed our judgment with regard to appellants' first assignment of error and remanded the case to this court for a consideration of the second assigned error, which reads:

"The trial court erred by concluding that the use authorized by Danbury Township Zoning Permit No. 213–89 violated the Danbury Township Zoning Resolution as a matter of law."

In 1989, J.I. Development, Inc., predecessor in interest to Baycliffs, applied for a zoning certificate in order to construct one hundred boat slips or berths to be subleased, on a ratio of one boat slip per residential unit, to the owners of private lots in a subdivision on Johnson's Island. The boat slips were to be constructed on submerged lands in Sandusky Bay leased by Baycliffs from the United States of America. In the application, J.I. Development, Inc. asserted that it owned the land contiguous to the leasehold. The record reveals that the proposed slips would be grouped on the so-called "finger area" of Johnson's Island, consisting of three promontories and formerly used by the state of Ohio for quarrying dockage. While the finger area may be contiguous with the leasehold, it is not contiguous with the individual private lots.

Under the Danbury Township Zoning Resolution, no structure can be erected except for a purpose permitted in the district in which it is located. Article II, Section 200.1, Danbury Township Zoning Resolution. The record discloses that the district in which the docks were to be constructed is zoned R–3, Multi–Family Residential. Under the Danbury Township Zoning Resolution, marinas, docking facilities, and "boat launching" are permitted uses in the Recreational–Commercial District. Article V, Section 507.1(f), Danbury Township Zoning Resolution. They are not permitted uses in the R–3 district. Article V, Section 503, Danbury

Township Zoning Resolution. Nonetheless, on November 22, 1989, the Danbury Township Zoning Inspector issued the requested zoning certificate, finding the dock slips to be a permitted use in an R–3 zoning district.

In December 1989, the Danbury Township Board of Trustees ("board") revoked the zoning permit, finding that the boat docks would constitute a commercial use. Baycliffs appealed the revocation, pursuant to R.C. Chapter 2506, to the Ottawa County Court of Common Pleas. The common pleas court found that the board lacked the authority to revoke Baycliffs' zoning certificate. The board appealed this judgment to this court, but later dismissed its appeal.

In January 1991, the board again revoked Baycliffs' zoning certificate. In doing so, the board stated that Baycliffs provided false information when it applied for the certificate. Specifically, the board noted that Baycliffs admitted, during a hearing, that the state of Ohio owned the submerged land upon which the docks were to be built and that Baycliffs had not received permission from the state to build these docks. According to the board, Baycliffs previously made representations that it owned the submerged lands.

Baycliffs filed an appeal from the second revocation. In December 1993, the Ottawa County Court of Common Pleas reversed the board's order. The board never appealed this judgment. Instead, on February 4, 1994, it reissued the zoning certificate to Baycliffs.

On April 29, 1994, the property owners filed a complaint against Baycliffs pursuant to R.C. 519.24.

The complaint alleged that appellees owned property adjoining the property where Baycliffs intended to construct the boat slips. While acknowledging that Baycliffs had a zoning certificate that allowed the construction of the slips in an R–3 zone, appellees argued that the planned construction was a "marina/dockage facility," as defined by state and local law, and therefore could not, pursuant to the local zoning resolution, be placed in an R–3 zoning district. Appellees requested a declaratory judgment finding that application # 213–89 was an application for development of a marina and/or dockage facility, an improper use on Johnson's Island under the Danbury Township Zoning Resolution, and that "the zoning permit issued to Defendant Baycliffs under application # 213–89 is void and of no effect." The property owners further demanded that, pursuant to R.C. 519.24, a preliminary and permanent injunction be issued prohibiting Baycliffs from "performing any construction activity in furtherance of application # 213–89 and/or in violation of the Danbury Township Zoning Resolution * * *."

Baycliffs answered and subsequently filed a motion for summary judgment. In that portion of the summary judgment motion relevant to this appeal, Baycliffs claimed that appellees failed to offer any evidence to create a question of fact on

the issue of whether they would be especially damaged by the construction of the boat slips; therefore, they were not entitled to injunctive relief under R.C. 519.24.

Appellees filed their own motion for summary judgment, supported by affidavits, depositions, and exhibits, in which they asserted that no question of fact existed on the issues of whether the proposed use (construction of one hundred boat slips) violated the relevant portions of the Danbury Township Zoning Resolution and whether they were especially damaged. In its reply, Baycliffs contended that the boat slips were permitted under the resolution as an accessory use.

On June 21, 1995, the trial court denied Baycliffs' motion for summary judgment. The court granted the property owners' motion for summary judgment. It declared that "application # 213–89" was an application for the development of a marina and/or dockage facility and that such a use was not permitted on Johnson's Island under the Danbury Township Zoning Resolution. The court further determined that the docks were not an "accessory use" within the meaning of the zoning resolution. Therefore, the common pleas court held that the "zoning permit issued to Defendant, Baycliffs, under application # 213–89" was "void and of no effect." Finally, the court concluded that appellees would be especially damaged because "the boat slips would be noisome, interfere with scenery and reduce property value." As a result, the court issued a permanent injunction prohibiting Baycliffs from constructing the proposed docks.

As stated by the Ohio Supreme Court, the central issue in Baycliffs' second assignment of error is "the question of whether the proposed docks are a proper use of land pursuant to the township zoning resolution." *Id.*, 81 Ohio St.3d at 251, 690 N.E.2d at 876. The Supreme Court also held:

"The issue of whether Baycliffs' proposed use of the property would violate the township zoning regulations was properly before the court of appeals. The trial court ruled that Baycliffs' proposed use of the property would violate the township zoning ordinance and granted summary judgment for the property owners, expressly observing that the 'zoning code's definition of a marina specifically excludes "docks or moorings appurtenant to a private residence and used only by the occupant of that residence and his paying guests." ' The trial court further stated the 'defendant's slips are launching and docking facilities in the most fundamental sense' and that 'docking facilities are not permitted in an R–3 district.' Finally, the trial court analyzed whether the boat slips would be permitted as an accessory use in the R–3 district, and addressed the issue of whether property owners would be especially damaged by the proposed use of the property. This decision by the trial court must be reviewed by the court of appeals upon our remand." *Id.* at 252, 690 N.E.2d at 876.

In compliance with the Ohio Supreme Court's mandate, we shall now consider the listed issues.

The standard employed by this court in determining this appeal is found in Civ.R. 56(C), which provides, in part:

"(C) Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Although Baycliffs does not assert any error with regard to the trial court's finding of special damages, the Supreme Court mentioned this issue, and, because it involves standing, we shall address this issue prior to considering Baycliffs' argued errors.[1]

Appellees brought their suit pursuant to R.C. 519.24. R.C. 519.24 provides that adjacent and neighboring property owners who would be especially damaged by a neighbor's violation of a township zoning regulation may pursue several different remedies, including an injunction and "any other appropriate action or proceeding."

Because R.C. 519.24 is a special statute, any person coming within its terms may avail himself of its provisions. *Brown v. Sperry* (1970), 23 Ohio App.2d 163, 167, 52 O.O.2d 205, 207, 261 N.E.2d 351, 354–355; *Kroeger v. Std. Oil Co. of Ohio, Inc.* (Aug. 7, 1989), Clermont App. Nos. CA88–11–086 and CA88–11–087, unreported, 1989 WL 87837. Thus, landowners who have been especially damaged by a zoning violation may seek an injunction without proof that they had suffered irreparable harm. *MacFarland v. Beaver Twp. Bd. of Appeals* (1967), 9 Ohio App.2d 57, 58–59, 38 O.O.2d 62, 62–63, 222 N.E.2d 841, 841–842; *Kroeger v. Std. Oil Co. of Ohio, Inc., supra.* Nevertheless, in the absence of such a showing of special damages, the property owners lack standing to pursue the remedies afforded in R.C. 519.24. *Carver v. Buckeye Fireworks & Novelty Co.* (1985), 24 Ohio App.3d 36, 24 OBR 59, 492 N.E.2d 1257; *McVey v. Reichley* (1957), 105 Ohio

---

1. Baycliffs asserted, in its first assignment of error, that appellees had no private right of action under R.C. 519.24. The Ohio Supreme Court made it clear that such a cause of action does exist. See *Ameigh v. Baycliffs Corp.*, 81 Ohio St.3d at 250–251, 690 N.E.2d at 875–876. Baycliffs did not specifically address the standing issue in its appeal to this court.

App. 319, 6 O.O.2d 105, 152 N.E.2d 321 (applying a similar statute, R.C. 713.13); *Kroeger, supra.*

In this case, the neighboring property owners' complaint included an allegation that they would be especially damaged by the construction of the dock slips and requested injunctive relief and a declaration of the validity of Baycliffs' use permit under R.C. Chapter 2721, the Declaratory Judgment Act. Baycliffs' motion for summary judgment alleged a failure to prove special damages.

The property owners' motion for summary judgment was supported by the affidavits of the individual property owners, each attesting to the fact that the construction of the dock slips would (1) "greatly increase the noise traffic, congestion, sewage and refuse in this otherwise remote and undeveloped area," (2) negatively affect the scenic value of his or her property, (3) increase boat activity that could damage the shoreline of the individual properties, and (4) have a negative impact on the value of his or her property due to the proximity to the dock slips. In making his or her affidavit, each property owner noted that his and/or her property was bounded by the only access streets to the finger area of Johnson's Island.

Appellees also submitted the affidavit of a real estate appraiser, who opined:

"Based on my experience as an appraiser and my familiarity with Johnson's Island, it is my opinion that the construction of a 100 boat slip docking facility and appurtenances in the finger area of Johnson's Island * * * will have an adverse impact upon the market value of those lots in the vicinity of the finger area, especially in comparison with other lots on the island which are removed from the docking facility or are on the opposite side of the island from the docking facility."

Finally, the property owners offered the affidavit of a sanitarian working for the Ottawa County Health Department who stated that the health department considered the proposed one hundred dock slips to be a "marina" within the meaning of R.C. Chapter 3733, and that, as a result, the Ottawa County Health Department would require some type of permanent sanitary facility at the site of the dock slips.

The evidence offered by appellees on their motion for summary judgment was sufficient to show no genuine issue of material fact existed on the question of whether they would be "especially damaged" by the proposed dock slips. A diminished value of property is enough to demonstrate special damage. *Matter v. Rittinger* (Aug. 26, 1988), Ross App. No. 1385, unreported. In this instance, the property owners had the affidavit of an appraiser who had personal knowledge of the values of real estate on Johnson's Island and provided an opinion that the value of appellees' properties would be reduced, particularly in relationship to

other island property, as a result of the construction of the dock slips. Further, the affidavits of the property owners and the sanitarian established that the character of the neighborhood would be affected in a different manner from other island properties by the proposed use. Baycliffs failed to offer any supporting evidence to create a question of fact on this issue. Therefore, the trial court did not err in determining that appellees would be especially damaged by Baycliffs' use of the neighboring property.

We now turn to arguments raised by Baycliffs in its second assignment of error. Baycliffs initially contends that its proposed use fits within the township's exception to a prohibition of a "marina" in an R–3 district.

Section 503.1 of the Danbury Township Zoning Resolution does not list a marina as a permitted use in an R–3 District. "Marina" is defined in Section 300(67) as: "A boat basin that has docks or moorings for seven (7) or more watercraft * * *." However, Section 300(67)(a) also states that "marina" does not include "[d]ocks or moorings appurtenant to a private residence and used only by the occupant of the residence and his paying guests * * *."

The township zoning resolution does not define the term "appurtenant." In its judgment, the trial court defined "appurtenant" as a "permanent accession to land." Finding that it was undisputed that Baycliffs leased the submerged land upon which the docks were to be built from the United States of America, the court held that "a lease is not a permanent accession to land." Baycliffs urges that this interpretation of the word "appurtenant" is too narrow.

Because zoning regulations deprive property owners of certain uses of their property and are in derogation of common law, zoning regulations must be strictly construed against the persons or authority seeking to restrict the use of such property. *Whiteco Metrocom v. Columbus* (1994), 94 Ohio App.3d 185, 190, 640 N.E.2d 563, 566–567. "Language defining a 'permitted use' is to be liberally construed in favor of permitting the use proposed by the owner." *Rotellini v. W. Carrollton Bd. of Zoning Appeals* (1989), 64 Ohio App.3d 17, 21, 580 N.E.2d 500, 503, citing *State ex rel. Spiccia v. Abate* (1964), 6 Ohio App.2d 233, 217 N.E.2d 709. Thus, where terms are not defined in a zoning regulation, the common and ordinary meanings of such terms are to be considered. *Sharp v. Union Carbide Corp.* (1988), 38 Ohio St.3d 69, 70, 525 N.E.2d 1386, 1387–1388; *Elsaesser v. Hamilton Bd. of Zoning Appeals* (1990), 61 Ohio App.3d 641, 647, 573 N.E.2d 733, 737; *Sammons v. Batavia* (1988), 53 Ohio App.3d 87, 89–90, 557 N.E.2d 1246, 1248–1250.

The word "appurtenant" is defined as "belonging to; accessory or incident to; adjunct, appended, or annexed to * * *." Black's Law Dictionary (5 Ed.1979) 94. The definition also includes: "A thing is deemed to be incidental or

*appurtenant* to land when it is by right used with the land for its benefit, as in the case of a way, or water-course, or of a passage for light, air, or heat from or across the land of another." (Emphasis *sic.*) *Id.* The same definitions are set forth in Black's Law Dictionary (6 Ed.1990) 102. The definition "permanent accession to land" is not included as a meaning of "appurtenant" in either edition. Instead, that definition appears following the word "appurtenance." "Appurtenance" is not employed in the township resolution to set forth the exception to "marinas." Accordingly, a "permanent accession to land" is not a common and ordinary definition of "appurtenant."

Furthermore, the court's definition is far too narrow in that it fails to construe even the term "appurtenance" in favor of Baycliffs. The interpretation in this case does not deal with the nature of a property right, for example, an easement. Rather, it involves the determination of the common and ordinary meaning of a term in a zoning resolution. Other meanings of "appurtenance" are broader and include not only the same definitions applied to "appurtenant," but also: "Something annexed to another thing more worthy as principal, and which passes as incident to it, as right of way or other easement to land; an outhouse, barn, garden, or orchard, to a house or messuage." The proposed dock slips in this case are incident to each of one hundred pieces of residential property to which each is connected in that the right to lease these dock slips passes with the· property. Therefore, the trial court erred as a matter of law in determining, in essence, that the proposed boat slips were a "marina" within the meaning of the Danbury Township Zoning Resolution.

■ However, the court also stated that the boat slips were docking facilities "in the most fundamental sense." As stated previously, this use is not permitted in an R–3 district.

A "dock" is defined in Webster's Collegiate Dictionary (10 Ed.1996) 341, as a "waterway extending between two piers for the reception of ships." A "facility" is "something (as a hospital) that is built, installed, or established to serve a particular purpose." *Id.* at 416. Here, it is undisputed that Baycliffs' planned use was to create waterways between piers for the purpose of the receiving and holding of boats. Consequently, the trial court did not err in finding that the boat slips were not a permitted use in the R–3 district because they constituted a docking facility.

■ Baycliffs next argues that the proposed boat slips are a permitted use in an R–3 district because they are an "accessory use."

Section 300(1), Article III, Danbury Township Zoning Resolution, defines an "accessory use" as: "A use * * * on the same lot with, and of a nature customarily incidental and subordinate to, the principal use." The property

owners maintain, and the trial court agreed, that the proposed use, a leased boat slip, would not be on the same lot with the residence of the lessee. Baycliffs argues, however, that the definition of "lot" in Section 300(58), Article III, Danbury Township Zoning Resolution, allows a grouping of docks to be located in areas that are not contiguous to a particular individual lot.

Section 300(58), Article III, Danbury Township Zoning Resolution, provides that a "lot" is:

"A parcel of land of sufficient size to meet minimum zoning requirements for use, coverage, and area, and to provide such yards and open spaces as are herein required. Such lot shall have frontage on an improved public street, or on an improved private street, and may consist of:

"a. a single lot of record;

"b. a portion of a lot of record;

"c. a combination of complete lots of record, of complete lots of record or portions of lots of records, or of portions of lots of record."

A "lot of record" is a "lot which is part of a subdivision recorded in the office of the County Recorder, or a lot or parcel described by metes and bounds, the description of which can also be recorded." Section 300(63), Article III, Danbury Township Zoning Resolution. According to Baycliffs, Section 300(58)(c) is an expansive definition of "lot," allowing the grouping of docks touching or contiguous to only one of the lots in a subdivision as a permitted use for the entire subdivision. We disagree.

The common and ordinary meaning of Section 300(58)(c) when read together with Section 300(63) is that a property owner of a lot in a subdivision may own a "lot" consisting of combinations of complete lots and/or portions of lots of record. However, Section 300(63) excludes any possibility of an entire subdivision being classified as a "lot." Additionally, we are not persuaded by the allegation that other subdivisions in Danbury Township have noncontiguous groups of docks that are leased or owned by each individual property owner. Baycliffs failed to offer any evidence that these subdivisions applied for and received a use permit under the Danbury Township Zoning Resolution. Thus, we conclude that the trial court did not err in granting the property owners' motion for summary judgment. Further, the common pleas court did not abuse its discretion in granting appellees' request for a declaratory judgment and the injunctive relief[2] necessary to enforce that declaration. Accordingly, Baycliffs' second assignment of error is found not well taken.

---

2. The granting of declaratory relief is a matter of judicial discretion so that the trial court's judgment will not be reversed unless its determination is clearly unreasonable. *Bilyeu v.*

On consideration whereof, this court finds substantial justice was done the party complaining, and the judgment of the Ottawa County Court of Common Pleas is affirmed.   Baycliffs is ordered to pay the costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and GLASSER, J., concur.

*Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, 37, 65 O.O.2d 179, 180, 303 N.E.2d 871, 872–873;  *Ohio Med. Professional Liab. Underwriting Assoc. v. Physicians Ins. Co. of Ohio* (1985), 27 Ohio App.3d 23, 26, 27 OBR 24, 27, 499 N.E.2d 347, 349–350.  The standard of review for the grant of injunctive relief is also whether the trial court abused its discretion. *Control Data Corp. v. Controlling Bd.* (1983), 16 Ohio App.3d 30, 35, 16 OBR 32, 36–38, 474 N.E.2d 336, 341–342.