{¶ 35} I disagree with the majority's holding because the proposed uses of the property by CityLink establish that it is a community service facility, which is not a permitted use in an MG district. CityLink spends a substantial amount of time arguing around this unequivocal fact by citing parts of the zoning code out of context. I believe that, in concluding that CityLink was not a community service facility, the trial court substituted its judgment for that of the ZBA, and I would, therefore, reverse the trial court's judgment.
 {¶ 36} It is true that courts must strictly construe zoning regulations in favor of the property owner.[14] But courts do not apply rules of construction when statutes or ordinances, including zoning regulations, are clear and unambiguous. When a statute or ordinance conveys a meaning that is clear and unequivocal, the need for interpretation is at an end, and the court should apply the law as written.[15] Further, when terms are not defined in a zoning regulation, a court should consider the common and ordinary meaning of those terms.[16]
 {¶ 37} Cincinnati's zoning code defines a community service facility as "a noncommercial facility established primarily for the benefit and service of the *Page 16 
populations of the communities in which they are located, such as YMCA or YWCA facilities, boys and girls clubs and 0ffices of community councils, non-profit civic, religious, welfare, or philanthropic organizations."[17] Giving the terms used their common, ordinary meanings, I am convinced that this definition is clear and unambigous.
 {¶ 38} The trial court found that CityLink's use of the property was commerical. The term "commercial" as it is commonly understood means "of, in or relating to commerce," "from the point of view of profit" and "having profit as the primary aim." "Commerce" means "the exchange or buying and selling of commodities esp[ecailly] on a large scale and involving transportation from place to place[.]"[18]
 {¶ 39} CityLink's own articles of incorporation show that it is a nonprofit entity, organized exclusively for charitable purposes. All of the organizations that would provide services at CityLink are philanthropic organizations, and their proposed activities are all philanthropic. Any other uses of the property, such as the café, the day-care center and the barber shop, would be to support CityLink's philanthropic mission and to serve CityLink's clients, not customers at large.
 {¶ 40} The trial court found that "CityLink will provide residents of Cincinnati who struggle with substance abuse, cope with physical, mental, or educational deficiencies, and face constant financial difficulties, a chance to re-enter the Cincinnati economy as a productive member of the workforce." CityLink's own literature states that "CityLink Center is about care, offering life relief, relationship and real life change to people who struggle." Further, "CityLink Center will provide *Page 17 
relief via outstretched hands that will change the trajectory of people's lives by meeting their physical, emotional, mental and spiritual needs through the intervention of, and in the direction of Jesus Christ."
 {¶ 41} Thus, CityLink would not be engaged in exchanging goods or services or in attempting to make a profit. CityLink would provide services as part of its charitable mission. Commerical enterprises, as they are commonly understood, focus on making a profit, not on rescuing those in need. Nothing in the record demonstrates that CityLink will be a commercial enterprise. To the contrary, the record shows that it is a nonprofit, noncommercial venture.
 {¶ 42} The trial court also found that CityLink was not established primarily for the benefit of the community in which it was located. Specifically, the court stated that "CityLink is designed and planned to business for all residents of Cincinnati, not just the residents of the West End."
 {¶ 43} First, this finding ignores the statements in CityLinks's own literature, which shows that the facility would primarily benefit the West End neighborhood. In a letter addressed "Dear West End Neighbor," CityLink stated, "CityLink Center is a 5-acre neighborhood campus where you can explore new life skills, get access to important integrated services, and meet other people who are growing. * * * City Link will offer many opportunities for you to make the changes you'd like in your life." It went on to state, "CityLink will enhance the aesthetics of this block and help to build a stronger community and a safer neighborhood." In other literature aimed at the West End Community Council, CityLink stated, "The CityLink Center will bring resources to the West End and breathe new life into Bank Street * * * [m]ulti-million dollar investment into the neighborhood * * * [t]housands of volunteers *Page 18 
contributing to a revitalized community." It is disingenuous for CityLink to now argue that it did not actually mean what it had said.
 {¶ 44} Second, the trial court took a restrictive view of the term "community," which the zoning code does not define, equating it with the term "neighborhood." But those terms are not synonomous.
 {¶ 45} "Community" means "a body of individuals organized into a unit," or "the people living in a particular place or region and usu. linked by common interest[,]"[19] "Neighborhood" means "the quality or state of being immediately adjacent or relatively near to something[.]" It also means "a number of people forming a loosely cohesive community within a larger unit (as a city, town) and living close or fairly close together in more or less familiar association with each other within a relatively small section or district[.]"[20]
 {¶ 46} The term "community" in the definition of a community service facility does not necessarily refer to the West End neighborhood. YMCAs and offices of nonprofit and religious organizations, which the zoning code specifically designates as community service facilities, may serve the populations of more than one neighborhood, but still primarily benefit the community as a whole. Therefore, CityLink is a community service facility even if it benefits and serves populations beyond that in the West End.
 {¶ 47} CityLink points out that the MG district is the "least restrictive" of all the zoning classifications in the zoning code. But the code still states that the purpose of manufacturing districts in general is to (1) "[p]romote and preserve manufacturing areas as significant employment generators"; (2) "[facilitate the *Page 19 
necessary infrastructure to accommodate a wide variety of transportation, manufacturing and technology uses"; (3) "[a]ccomodate existing traditional industries, while anticipating new technologies and business service uses"; and (4) "[p]reserve appropriate location of industries that may have the potential to generate off-site impacts, while providing compatability in use and form."[21]
 {¶ 48} Specifically, the purpose of the MG district is "[t]o create, preserve and enhance areas that are appropriate for a wide variety of supporting and related commercial and manufacturing establishments that may have the potential to generate off-site impacts. Future development will accommodate heavy industrial and manufacturing uses, transportation facilities, warehousing and distribution and similar related supporting uses. These uses typically require sites with good transportation access. Uses that may inhibit industrial development are prohibited."[22]
 {¶ 49} The zoning code excludes community service facilities from the MG district because they do not support manufacturing. The evidence before the ZBA unequivocally showed that CityLink's uses would not benefit, facilitate, or enhance manufacturing and were generally inconsistent with industrial development. Further, the uses would not directly benefit those working in the surrounding manufacturing or industrial areas. Simply stated, CityLink does not belong in a manufacturing district. To conclude otherwise is to ignore the plain language of the zoning code. Whether another type of retail store is a permitted use is irrelevant and is not at issue in this case. *Page 20 
 {¶ 50} In undertaking its review of the decision of an adminsitrative agency, the common pleas court must give due deference to the agency's resolution of evidentiary conflicts and may not, especially in areas of adminstrative expertise, substitute its judgment for that of the agency.[23] Further, courts should uphold a zoning board's interpreation of the zoning code where the interpretation is reasonable.[24] The bottom line is that the ZBA's decision was reasonable, and it was supported by a preponderance of the evidence. Thus, the trial court should have affirmed the ZBA's decision, regardless of whether the court agreed with it.
 {¶ 51} In my view, the trial court abused its discretion in concluding that the ZBA's decision was "arbitrary, unreasonable and unsupported by a preponderance of substantial, reliable and probative evidence[,]" and it improperly substituted its judgment for that of the board. I would reverse the trial court's judgment and reinstate the decision of the ZBA.
[14] Ware v. Zoning Bd. of Appeals, 164 Ohio App.3d 772,2005-Ohio-6516, 844 N.E.2d 357, ¶ 6.
[15] Silver Lake v. Metro Reg. Transit Auth., 111 Ohio St.3d 324,2006-Ohio-5790, 856 N.E.2d 236, ¶ 17; Taylor v. Circleville, 4th Dist. No. 03CA8, 2003-Ohio-7166, ¶ 11.
[16] In re Appropriation for Hwy. Purposes of Land of Seas (1969),18 Ohio St.2d 214, 249 N.E.2d 48, paragraph one of the syllabus; Ameigh v.Baycliffs Corp. (1998), 127 Ohio App.3d 254, 262, 712 N.E.2d 7841.
[17] Cincinnati Municipal Code 1401-01-C14.
[18] Webster's Third New International Dictionary Unabridged (1961) 456.
[19] Webster's, supra, at 460.
[20] Id. at 1514.
[21] Cincinnati Municipal Code 1413.01.
[22] Cincinnati Municipal Code 1413.03(b).
[23] Cash v. Cincinnati Bd. of Zoning Appeals (1996),117 Ohio App.3d 319, 322-323, 690 N.E.2d 593; Elsaesser v. Hamilton Bd. of ZoningAppeals (1990), 61 Ohio App.3d 641, 646, 573 N.E.2d 733.
[24] LaMar Outdoor Advertising, Inc. v. Dayton Bd. of ZoningAppeals, 2nd Dist. No. 20158, 2004-Ohio-4796, ¶ 6. *Page 1