[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 247.]

AMEIGH ET AL., APPELLANTS, *v*. BAYCLIFFS CORPORATION ET AL., APPELLEES.

[Cite as *Ameigh v. Baycliffs Corp.*, 1998-Ohio-467.]

*Civil procedure—Where judgment of a court is not dispositive on issues that a party later seeks to litigate, res judicata is not applicable, even if the prior court decision has discussed the issues that are the subject of the current litigation.*

(No. 96-1209—Submitted October 21, 1997—Decided February 6, 1998.)

APPEAL from the Court of Appeals for Ottawa County, No. OT-95-049.

_____

{¶ 1} In 1989, J.I. Development, Inc., predecessor in interest to appellee Baycliffs Corporation ("Baycliffs"), applied for a zoning permit to construct one hundred individually owned docks appurtenant to private lots on Johnson's Island, an island located in Sandusky Bay in Danbury Township of Ottawa County. Pursuant to a zoning resolution of the Danbury Township Board of Trustees, the entire island has been classified as a multifamily residential district, or "R-3."

{¶ 2} The Danbury Township Zoning Inspector issued the permit requested by J.I. Development, after determining that the docks were a permitted use in an R-3 zoning district. Subsequently, the trustees revoked the permit on the grounds that the proposed use of the land was commercial, a prohibited use in an R-3 district.

{¶ 3} Baycliffs filed an administrative appeal pursuant to R.C. Chapter 2506 challenging the trustees' decision in the Court of Common Pleas of Ottawa County. On October 15, 1990, the trial court found that the trustees were without jurisdiction to revoke the permit and reversed the trustees' revocation of the permit. The trial court stated:

"Township trustees possess only such powers as are expressly conferred upon them by statute and by resolutions adopted pursuant to such statutes. Chapter

519 of the Revised Code provides for the powers and duties of township trustees, but there is no specific authority granted to the Trustees under either the Ohio Revised Code or the Danbury Township Zoning Resolution ('Resolution') by which the Trustees can revoke a zoning permit issued by the inspector without a showing that the permit was issued upon a false statement. * * *

"Therefore, if the Trustees felt that the decision of the Inspector was erroneous, their only remedy was to file an appeal with the Board of Zoning Appeals within twenty days after the Inspector's decision. * * * Thus, the Trustees were without jurisdiction to revoke the Inspector's decision to issue the permit." (Citations omitted.)

{¶ 4} The trustees appealed the order of the trial court to the Ottawa County Court of Appeals, but later dismissed the appeal.

{¶ 5} In 1991, the trustees again revoked Baycliffs' permit, stating that Baycliffs had provided false information when it applied for the certificate. Baycliffs then filed an administrative appeal challenging the trustees' second revocation of the zoning permit. The trial court again reversed the trustees' decision:

"The Court, having reviewed and considered the record herein, which consists of the transcript of the proceedings before Danbury and the additional evidence submitted on the motion of Baycliffs pursuant to R.C. § 2506.03, as well as the briefs of the parties to this appeal, hereby determines that Danbury's decision revoking Zoning Permit No. 213-89 was illegal, arbitrary, capricious, unreasonable and unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. Therefore, it is

"* * *

"ORDERED, ADJUDGED AND DECREED that Zoning Permit No. 213-89 is a valid and enforceable zoning permit allowing construction of 100 docks in the designated area."

2

{¶ 6} The trustees did not appeal this judgment and the permit was re-issued to Baycliffs.

{¶ 7} Subsequently, Ronald and Luz Ameigh, Richard and Marlene Holkovic, Ronald and Julia Doll, Kenneth Szostek, and the Johnson's Island Property Owners' Association ("property owners") filed a complaint against Baycliffs and Johnson's Island, Inc. seeking a declaratory judgment and injunctive relief pursuant to R.C. 519.24. The property owners alleged that Baycliffs planned to construct a marina on the island, and that use of the land in this manner was impermissible in an R-3 zoning district. The property owners further alleged that because the planned construction was impermissible, the zoning permit issued to Baycliffs was invalid, and that injunctive relief was necessary to prevent construction of the docks.

{¶ 8} In its answer, Baycliffs asserted, *inter alia*, the defense of *res judicata*, arguing that the issue of whether the docks were a permitted use of the property had been litigated and decided in the two prior administrative appeals and that, therefore, the property owners were precluded from litigating the issue again. The trial court rejected Baycliffs' *res judicata* defense, finding that the two prior appeals did not address "the legality of defendants [*sic*] zoning permit," and that there was no mutuality of parties to support the application of *res judicata*. The trial court granted summary judgment to the property owners and issued an injunction enjoining Baycliffs from building the docks.

{¶ 9} Baycliffs appealed the judgment of the trial court to the Court of Appeals for Ottawa County. The court of appeals reversed the judgment of the trial court, holding that the property owners' declaratory judgment action was barred by the doctrine of *res judicata* because the suit was "based on the same transaction that was the subject matter of the previous administrative appeals." The court further held that because the property owners had not pursued any administrative remedies, the trial court was without jurisdiction over the request for a declaratory judgment.

In considering the property owners' request for injunctive relief, the court assumed that the property owners were not bound by the earlier litigation. It then held that the property owners' action was not allowed by R.C. 519.24 and that the earlier litigation divested the trial court of jurisdiction over the property owners' case.

{¶ 10} The cause is now before us pursuant to the allowance of a discretionary appeal.

––––––––––––––––––

*Connelly, Soutar & Jackson, Steven R. Smith* and *Janine T. Avila; Wilber & Wilber* and *George C. Wilber,* for appellants.

*Kelley, McCann & Livingstone, John D. Brown* and *Robert A. Brindza; Meyer, Kocher, Leoffler & Wargo* and *John A. Kocher,* for appellees.

––––––––––––––––––

**MOYER, C.J.**

{¶ 11} This civil action presents two issues. We must first determine whether the court of appeals was correct in its holding that the property owners' cause of action was barred by the doctrine of *res judicata*. We must also examine the court of appeals' holding that the trial court was without jurisdiction to consider the declaratory judgment action brought by the property owners because the property owners failed to exhaust their administrative remedies prior to filing suit. Our analysis of the law and record causes us to conclude that the cause of action brought by the property owners is not barred by the doctrine of *res judicata*. Moreover, our recent holding in *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 674 N.E.2d 1388, determined that failure to exhaust administrative remedies is not a jurisdictional bar to a declaratory judgment action. *Id.* at syllabus. Accordingly, we reverse the judgment of the court of appeals.

{¶ 12} We have observed that in order for *res judicata* to apply, a valid, final judgment must have been rendered upon the merits and an identity of parties or their privies must exist. *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108,

49 O.O.2d 435, 254 N.E.2d 10, paragraph one of the syllabus, modified in part on other grounds in *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229. *Res judicata* also applies where an issue is litigated that has been "actually and necessarily litigated and determined in a prior action." *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, 1062. The property owners contend that the doctrine of *res judicata* is not applicable to the two administrative appeals that were brought prior to this action. We agree.

{¶ 13} In the first administrative appeal brought by the trustees against Baycliffs, the trial judge found that the trustees lacked authority to revoke the zoning permit. It is apparent from the entry that the trial judge simply found that the trustees had no power to revoke the permit on the stated grounds. Where a reviewing tribunal reverses the judgment of a lower tribunal on the grounds that the lower tribunal had no jurisdiction to act, the judgment of the reviewing tribunal is not a judgment on the merits and is not *res judicata* as to a future cause of action seeking adjudication upon the merits. *Gibson v. Summers Constr. Co.* (1955), 163 Ohio St. 220, 229, 56 O.O. 223, 226, 126 N.E.2d 326, 331. Similarly, the determination by the trial judge was merely procedural in nature, and was not a valid, final judgment on the claim that the proposed construction was not a permitted use.

{¶ 14} In the second administrative appeal, the trial court determined that the trustees' decision to again revoke the zoning permit was "illegal, arbitrary, capricious, unreasonable and unsupported by the preponderance of substantial, reliable and probative evidence on the whole record." Similar to the entry issued in the first administrative appeal, the journal entry does not discuss the issue of whether Baycliffs' proposed use of the land would violate township zoning regulations.

{¶ 15} The entry does state that the zoning permit is a "valid and enforceable zoning permit allowing construction of 100 docks in the designated

area." However, this language must be examined within the context of the issues that were litigated. According to the evidence presented by Baycliffs, the suit was brought to challenge the trustees' revocation of the permit on the trustees' claim that the permit had been issued based upon a false statement. Despite the above language, Baycliffs has not shown that any issue other than the alleged false statement was actually litigated. An issue must be actually and necessarily litigated for *res judicata* to apply to that issue in a later proceeding. *Whitehead, supra,* 20 Ohio St.2d at 112, 49 O.O.2d at 437, 254 N.E.2d at 130. In addition, while the trial court stated in the entry that the permit was valid, there is no application of the township zoning regulations to the proposed use of the land or citation to the regulations or other relevant authority. Therefore, the entry cannot be reasonably viewed as an order that determined the legality of Baycliffs' proposed use of the land under the zoning regulations of the township.

{¶ 16} Therefore, we cannot sanction the application of *res judicata* here. Where the judgment of a court is not dispositive on issues which a party later seeks to litigate, *res judicata* is not applicable. *State ex rel. Brookpark Entertainment, Inc. v. Cuyahoga Cty. Bd. of Elections* (1991), 60 Ohio St.3d 44, 47, 573 N.E.2d 596, 599-600. This is true even if the prior court decision has discussed the issues that are the subject of the current litigation. *Id.*

{¶ 17} Therefore, we hold that the property owners are not barred by *res judicata* from maintaining an action for declaratory judgment pursuant to R.C. 519.24. There is no reasonable basis to support the conclusion that the issue of whether the proposed use of the land would violate the township regulations was actually litigated or decided in the two prior administrative appeals. Thus, the issue of whether the property owners were parties or were in privity with parties to the prior administrative actions is of no importance.

{¶ 18} The court of appeals also determined in its holding in favor of Baycliffs that the trial court was without jurisdiction to entertain the declaratory

judgment action brought by the property owners because the property owners had failed to exhaust their administrative remedies prior to filing suit. Subsequent to the decision of the court of appeals in this case, we have held that failure to exhaust administrative remedies is not a jurisdictional bar to a declaratory judgment action. *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 674 N.E.2d 1388, syllabus. The Declaratory Judgment Act allows courts of common pleas to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." R.C. 2721.02. Inasmuch as the property owners seek injunctive relief here, R.C. 2727.02 *et seq.* grants courts of common pleas the authority to grant such relief. Accordingly, the trial court properly had subject matter jurisdiction to hear and decide this case upon its merits. See *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 61 O.O.2d 335, 290 N.E.2d 841, paragraph one of the syllabus. Therefore, the portion of the court of appeals' opinion on this issue, whether it is merely *dicta* or is in fact dispositive of the case, is incorrect.

{¶ 19} In its analysis of whether the property owners were entitled to seek injunctive relief under R.C. 519.24, the court of appeals stated that "it is undisputed that Baycliffs has a valid zoning certificate that permits the corporation to construct the one hundred docks."

{¶ 20} That statement is simply incorrect. In this appeal, the trial court specifically ruled that Baycliffs' proposed use of the land would violate the township zoning regulations. Indeed, the question of whether the proposed docks are a proper use of land pursuant to the township zoning resolution is the central dispute in this litigation. At the time of Baycliffs' appeal to the court of appeals, Baycliffs did not have a valid permit.

{¶ 21} Further, we hold that the prior two administrative appeals did not divest the trial court of jurisdiction to consider whether the property owners were entitled to injunctive relief under R.C. 519.24. The court of appeals stated that the trial court lacked jurisdiction because the "zoning certificate was determined to be

valid, not once, but twice, by the same court in which appellees now seek injunctive relief." For the reasons stated earlier, the prior administrative appeals have no effect on the jurisdiction of the trial court to entertain this action.

{¶ 22} The issue of whether Baycliffs' proposed use of the property would violate the township zoning regulations was properly before the court of appeals. The trial court ruled that Baycliffs' proposed use of the property would violate the township zoning ordinance and granted summary judgment for the property owners, expressly observing that the "zoning code's definition of a marina specifically excludes 'docks or moorings appurtenant to a private residence and used only by the occupant of that residence and his paying guests.' " The trial court further stated that the "defendant's slips are launching and docking facilities in a most fundamental sense" and that "docking facilities are not permitted in an R-3 district." Finally, the trial court analyzed whether the boat slips would be permitted as an accessory use in the R-3 district, and addressed the issue of whether the property owners would be especially damaged by the proposed use of the property. This decision by the trial court must be reviewed by the court of appeals upon our remand.

{¶ 23} For the foregoing reasons, the judgment of the court of appeals is reversed, and the cause is remanded to the court of appeals for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, REECE, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., dissent.

JOHN W. REECE, J., of the Ninth Appellate District, sitting for RESNICK, J.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 24} Because I believe that the two judgments from the administrative appeals are *res judicata*, I respectfully dissent and would affirm the court of appeals.

{¶ 25} A final judgment on the merits precludes relitigation of the same issues or claims where there is mutuality of the parties involved in the two actions pursuant to *res judicata*. *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226.

{¶ 26} The majority determines that the courts in both administrative appeals determined that the "trustees lacked authority to revoke the zoning permit." Based on that determination, the majority concludes that *res judicata* would not bar further proceedings challenging the permit on the basis that the first administrative appeal was not decided on the merits but "was merely procedural in nature," and the second determined only that the claimed basis for revocation, false statements, was unsupported—I disagree. I would find that *res judicata* does apply because in both administrative appeals, the courts determined that Baycliffs' zoning permit was valid and not in violation of township regulations, thereby rendering a final judgment that addressed the merits of the permit. I would also find that there is mutuality between the parties.

A. Final Judgment on the Merits

{¶ 27} First, I note that the mere fact that the courts in the administrative appeals determined that the trustees were without authority to *revoke* the permit does not deprive the courts of jurisdiction to address the merits of the permit. In other words, if the courts determined that the trustees had no authority to revoke the permit and therefore the permit was valid, then the merits of the permit were addressed and decided. I believe that is precisely what occurred in this case.

{¶ 28} The majority claims that the matters dealt with by the trial courts were merely procedural and did not determine whether the proposed use of the land

would violate zoning regulations.  I disagree with both conclusions.  My review of the two lawsuits leads me to the opposite results.

{¶ 29} A zoning permit is typically issued by a zoning inspector.  A zoning inspector must issue a building permit where the landowner has complied with all requirements.  *Gibson v. Oberlin* (1960), 171 Ohio St. 1, 12 O.O.2d 1, 167 N.E.2d 651.  A zoning permit is valid and the property owner has a right to rely upon it until challenged in a proper legal proceeding.  *Brooks v. Canfield* (1972), 34 Ohio App.2d 98, 104, 63 O.O.2d 161, 164, 296 N.E.2d 290, 295.  On November 22, 1989, the Danbury Township Zoning Inspector issued a zoning permit to Baycliffs.  The Danbury Township Board of Trustees revoked the permit without notice of hearing on December 20, 1989.  Baycliffs appealed that decision to the Ottawa County Common Pleas Court.  See *Baycliffs Corp. v. Danbury Twp. Bd. of Trustees* (Oct. 15, 1990), Ottawa C.P. No. 90-Cl-073, unreported.

{¶ 30} In the briefing of the case, the parties vigorously debated the very issue at the heart of the property owners' appeal—whether the proposed docks were really a marina and therefore were a commercial use in violation of R-3 zoning.  In fact, the trustees' lead paragraph in its brief on appeal was:

"A.  The permit to construct 100 boat docks or slips issued by the township zoning inspector is invalid as constituting a use not permitted under Section 503.1 of the Danbury Township Zoning Resolution creating uses permitted and accessory uses within a multi-family residential district ('R-3')."

{¶ 31} The trustees' brief concludes by once again arguing, with great passion, that the dock slips, however characterized, are still just that—dock slips that are part of a marina and therefore a commercial use.

{¶ 32} In reply, Baycliffs argues that if the board of township trustees objected to the zoning inspector's actions, it should have appealed to the board of zoning appeals.  However, the vast bulk of its brief argues equally passionately that

10

its property was in compliance with the zoning ordinance, and that the dock slips are not a commercial use.

{¶ 33} The trial judge ruled that the trustees' only remedy was to file an appeal with the board of zoning appeals within twenty days after the inspector's decision. The court found that the trustees had failed to file a proper appeal, and since they had no power to simply revoke the zoning on their own (except on the basis that it had been issued on false statements), found that the trustees' action was void. Because the trustees failed to properly appeal the issues, the court found that their claim must fail. The court concluded by stating:

"Accordingly, Baycliffs Corporation *still has a valid zoning permit*." (Emphasis added.)

{¶ 34} In the judgment entry, the court stated:

"It is ORDERED, ADJUDGED and DECREED that the December 20, 1989 decision by the Danbury Township Board of Trustees revoking the zoning permit issued to Baycliffs Corporation is reversed.

"It is further ORDERED that the zoning permit issued to Baycliffs Corporation on November 22, 1989, is valid."

{¶ 35} A careful reading of the trial court's decision reveals that its conclusions are *twofold*. First, the trustees' revocation of the zoning permit was invalid and therefore their decision was reversed. Second, the court went on to state that "*it is further ordered*" that the zoning permit issued to Baycliffs Corporation was *valid*. In other words, because there was no timely challenge or appeal made to the zoning permit, it was valid. Therefore, I would find that this entry has two separate holdings, the second holding finding the zoning permit to be conclusively valid, *i.e.*, the holding determined the merits of the permit. The trustees appealed the decision to the court of appeals, but dismissed the appeal.

**{¶ 36}** In 1991, after the trustees revoked the permit for a second time, Baycliffs again filed an administrative appeal. This time, the trial court's decision was even more direct in addressing the merits. The court stated:

"The Court, having reviewed and considered the record herein, which consists of the transcript of proceedings before Danbury and the additional evidence submitted on motion of Baycliffs pursuant to R.C. 2506.03, as well as the briefs of the parties to this appeal, hereby determines that Danbury's decision revoking Zoning Permit No. 213-89 was *illegal, arbitrary, capricious, unreasonable and unsupported by the preponderance of substantial, reliable and probative evidence on the whole record.*" (Emphasis added.)

**{¶ 37}** The court then very clearly stated that it was "ORDERED, ADJUDGED and DECREED that Zoning Permit No. 213-89 *is a valid and enforceable zoning permit allowing construction* of 100 docks in the designated area." (Emphasis added.)

**{¶ 38}** On January 10, 1994, in a special meeting of the Danbury Township Board of Trustees, the trustees voted not to appeal the matter further, and to reissue the permit as ordered by the court.

**{¶ 39}** The second order of the court makes it quite clear that the court was ruling on the whole record and made a very specific finding that the zoning permit was *valid* and *enforceable*.

**{¶ 40}** Thus, the decisions in both administrative appeals addressed the validity of the permit on its merits, *i.e.*, whether the permitted structure was allowed under the zoning. The favorable determinations on the validity of the permit were never appealed further in either administrative appeal. The determination that the trustees did not have jurisdiction to revoke the permit does not nullify the fact that the administrative appeal decisions were on the merits of the permit because that determination remains valid until challenged in a proper legal proceeding. *Brooks*. Thus, the determinations in the administrative appeals were on the merits.

{¶ 41} The case cited by the majority, *Gibson v. Summers Constr. Co.* (1955), 163 Ohio St. 220, 56 O.O. 223, 126 N.E.2d 326, is not even on point. *Gibson* dealt with the jurisdiction of the Euclid Municipal Court over a defendant outside the territorial limits of the municipal court. The *Gibson* court found that the Euclid Municipal Court never had personal jurisdiction over the defendant and therefore the plaintiff was still free to sue the defendant in the proper court. This court in *Gibson* held:

"It is apparent from this entry that the judgment of the Court of Appeals did not go to the merits but simply reversed the judgment of the Euclid Municipal Court because it had no jurisdiction to render it." *Id*. at 229, 56 O.O. at 226, 126 N.E. 2d at 331.

{¶ 42} Here, we had a properly filed administrative appeal; jurisdiction in the common pleas court was never contested. While the entry dealt with the lack of authority of the trustees to revoke the permit, it is very apparent that the entry also deals with the validity of the zoning. In addition, the plaintiff in *Gibson* could *not* have refiled in another jurisdiction if he had missed the statute of limitations. Here, the trustees missed their statute of limitations to file with the board of zoning appeals. Therefore, even if one accepts that these appeals were dismissed on procedural grounds, *res judicata* attaches because the first court found that the trustees failed to timely file an appeal with the board of zoning appeals. Judgments become preclusive in more ways than by litigation of all the issues. *Res judicata* attaches to issues which could have been litigated in the prior action. *Stromberg v. Bratenahl Bd. of Edn.* (1980), 64 Ohio St.2d 98, 18 O.O.3d 343, 413 N.E.2d 1184. *Res judicata* attaches when a party fails to meet the applicable statute of limitations. *LaBarbera v. Batsch* (1967), 10 Ohio St.2d 106, 39 O.O.2d 103, 227 N.E.2d 55. *Res judicata* attaches when a case is dismissed for failure to prosecute. Civ.R. 41(B); *Rice v. Westlake* (June 15, 1989), Cuyahoga App. No. 55424, unreported, 1989 WL 65677. In all of these cases, a party did not litigate the underlying merits

of the case, yet was precluded from litigating the issues in a later case on the basis of *res judicata*.

{¶ **43**} Here, *res judicata* would attach because the merits of the permit were litigated, a final judgment was rendered, and the judgment was not appealed. In addition, since the proper appeal was never taken to the board of zoning appeals, *res judicata* also applies to issues that could have been litigated in such an appeal. To take the position the majority espouses is to strip the law of *res judicata*'s finality.

### B. Mutuality of Parties

{¶ **44**} This court, in *Cincinnati ex rel. Crotty v. Cincinnati* (1977), 50 Ohio St.2d 27, 4 O.O.3d 83, 361 N.E.2d 1340, addressed the issue of mutuality of parties pertaining to *res judicata* in the context of the ability of citizens to litigate an issue that had already been addressed in an action by a governmental entity. In *Crotty,* taxpayers and water users filed suit in 1976 to challenge a 1975 ruling by this court upholding an order by the Director of Environmental Protection that fluoride be added to Cincinnati's water system. In holding that the 1976 action was barred, the court in *Crotty* stated:

"[A] judgment for or against a governmental body * * * is binding and conclusive as *res judicata* on all residents, citizens and taxpayers with respect to matters adjudicated which are of general and public interest * * *. Where, as here, the case involves a single cause of action, the prior judgment is conclusive not only as to what was determined in the prior action, but also as to all material facts or questions which properly might have been litigated in the case." *Id*. at 28-29, 4 O.O.3d at 84, 361 N.E.2d at 1341.

{¶ **45**} In *Stromberg v. Bratenahl Bd. of Edn., supra* , this court elaborated on the *Crotty* case, finding that a taxpayer might have a private right to relitigate a public issue "where causes of action are not the same or where the taxpayer has a

14

different private right not shared in common with the public." *Id.*, 64 Ohio St.2d at 101, 18 O.O.3d at 345, 413 N.E.2d at 1186.

{¶ 46} As in *Crotty* and *Stromberg,* the property owners in the case at bar could have raised their complaint in an earlier proceeding. In fact, the issues that were raised in those hearings were identical to those that the property owners brought in this action. The trustees had sought the same determination that the property owners seek—that the dock slips are commercial uses prohibited by zoning. The damage to the township from commercial use would be the same as damage to the property owners, although perhaps different in degree. Accordingly, pursuant to the rationale in *Crotty* and *Stromberg*, I would find that in the context of *res judicata* there was mutuality of parties between Baycliffs and the property owners on the issue of the validity of Baycliffs' permit.

## C. Public Policy of R.C. 519.24

{¶ 47} The statute under which the appellants, property owners, bring their complaint for declaratory judgment is R.C. 519.24, which states:

"In case any building is or is proposed to be located, erected, constructed, reconstructed, enlarged, changed, maintained, or used or any land is or is proposed *to be used in violation of sections 519.01 to 519.99*, *inclusive,* of the Revised Code, or of any regulation or provision adopted by any board of township trustees under such sections, such board, the prosecuting attorney of the county, the township zoning inspector, or any adjacent or neighboring property owner who would be especially damaged by such violation, in addition to other remedies provided by law, may institute injunction, mandamus, abatement, or any other appropriate action or proceeding to prevent, enjoin, abate, or remove such unlawful location, erection, construction, reconstruction, enlargement, change, maintenance, or use." (Emphasis added.)

{¶ 48} The operative phrase in this statute is "to be used in violation of." Therefore, Baycliffs must be in violation of its zoning permit or a regulation for

any of the parties listed in R.C. 519.24 even to have a cause of action. Yet Baycliffs has had a valid zoning permit since 1989, which permit has been found to be valid not just once, but twice, by a court of law.

{¶ 49} This interpretation makes sense in view of the remedies available to parties affected by zoning and under what circumstances an action may be filed under R.C. 519.24.

{¶ 50} Baycliffs applied for a building permit through the building inspector. The granting of a zoning permit by the building inspector can be appealed to the township board of zoning appeals by a township officer or an aggrieved person. Danbury Twp. Zoning Resolution Section 901.1. See, also, *In re Rocky Point Plaza Corp.* (1993), 86 Ohio App.3d 486, 621 N.E.2d 566. Pursuant to R.C. Chapter 2506, the determinations of a zoning board may be appealed through the court system. *Guysinger v. Chillicothe Bd. of Zoning Appeals* (1990), 66 Ohio App.3d 353, 584 N.E.2d 48. Thus, the legal machinery set out in R.C. Chapter 2506 allows appeals of alleged violations of zoning resolutions to be further appealed, providing due process for all parties involved.

{¶ 51} However, what if the property owner decides unilaterally to build a structure without first acquiring a permit? How does an aggrieved party seek redress? The appeal process is through R.C. 519.14, because there is no permit to appeal to the township board of zoning appeals. It is under this scenario that R.C. 519.24 provides a means of redress. An aggrieved property owner, the county prosecutor, the township trustees, or the township zoning inspector may file suit alleging that no zoning permit has been issued or alleging that the offending entity's structure or proposed structure otherwise violates the existing zoning code, notwithstanding the fact that no permit was issued.

{¶ 52} To follow the property owners' interpretation of R.C. 519.24 would lead to an absurd result because it would allow adjudications under R.C. 519.24 to disrupt and contradict final decisions made pursuant to the administrative appeal

process. Statutes will not be interpreted to obtain an absurd result. *Mishr v. Poland Bd. of Zoning Appeals* (1996), 76 Ohio St.3d 238, 240, 667 N.E.2d 365, 366-367.

{¶ 53} Thus, in the case at bar, R.C. 519.24 is useless to the property owners because Baycliffs utilized official channels to acquire the permit. The property owners should have participated in that process. Notice and hearing are required prior to the consideration of a permit by the board of zoning appeals. R.C. 519.15. Citizens must address public issues or be precluded from further litigation of these issues. *Crotty*. Yet the property owners failed to appear and protect their rights. Because they did not do so, they cannot now after the fact seek redress under R.C. 519.24. Surely the legislature could not have intended such unbridled disruptive use of this particular statute to undo the administrative holdings in this case.

{¶ 54} The public policy behind *res judicata* is finality. *Crotty*. That policy is particularly compelling in this case. Both administrative appeals decisions determined that the zoning permit was valid. It has been more than eight years since the zoning permit was first issued. To allow interested parties to bring identical new claims more than four years after the permit was issued is to place all the construction and planning, which relied upon earlier rulings, into a state of total chaos.[1] Under the majority's interpretation, there is simply no statute of limitations governing the actions of parties seeking a remedy under R.C. 519.24. Under the majority's interpretation, parties will lack confidence to act and rely upon zoning permits for fear that they could be invalidated at any time, even after completion of a project.

---

1. The permit was issued to Baycliffs in November 1989. The first decision addressing the permit was rendered in common pleas court, *Baycliffs I*, in October 1990; the second decision was rendered in common pleas court, *Baycliffs II*, in December 1993. The complaint in this case was filed in April 1994.

**{¶ 55}** In good conscience I simply cannot join the majority opinion that allows such an action to disrupt the orderly development under a zoning permit issued eight years ago.

### D. Conclusion

**{¶ 56}** In conclusion, I would find that the property owners' action under R.C. 519.24 was barred by *res judicata* because the two administrative appeals addressed the merits of Baycliffs' permit in a final judgment and there was mutuality of parties between the township and the property owners. Therefore, I respectfully dissent.

COOK, J., concurs in the foregoing dissenting opinion.

_____