DECISION AND JUDGMENT ENTRY
Plaintiff-Appellant Drydock Coal Company [hereinafter Drydock] appeals from the judgment of the Athens County Court of Common Pleas, which granted the summary judgment motion of Defendants-Appellees James F. Graham and Indybuck Coal Company [hereinafter Graham].[1]
Based on its disposition of Graham's motion for summary judgment, the court below also sua sponte entered summary judgment in favor of Defendants-Appellees Joan and Everett Holmes, Jr. [hereinafter theHolmes]. We affirm.
 STATEMENT OF THE CASE
The instant case is the latest episode in a continuing saga of litigation among these parties that dates back to 1992. At issue is the right to control the strip mining of coal on a parcel of land in Athens County, Ohio, consisting of approximately 302.11 acres. In the 1950s, the Cambria Mining Company [hereinafter Cambria] owned the entire estate in fee simple. Cambria transferred the surface estate of the property to Helen Holmes by two deeds, one dated April 12, 1955, conveying 234.19 acres, and one dated April 2, 1962, conveying the remaining 67.92 acres. Cambria retained ownership of the mineral rights to the property and also the right to enter upon the land to extract any minerals.[2] The Holmes are the successors in interest to Helen Holmes, and Drydock is the successor in interest to Cambria.
On September 25, 1990, the Holmes entered into a "Surface Lease for Coal" with Graham [hereinafter the Graham-Holmes agreement]. The Graham-Holmes agreement recognized Drydock's ownership of the coal under the property, but purported to reserve for Graham the exclusive right to conduct surface mining operations on the subject property for fifty years. Graham must pay an annual fee to the Holmes for the duration of the lease to retain this right, regardless of whether or not the property is ever mined. In addition, the agreement provides that the Holmes are entitled to royalty payments in the event that coal is ultimately mined from the property by Graham, his heirs, successors, or assignees.
In 1992, Graham filed suit in the Athens County Court of Common Pleas seeking a declaratory judgment that Drydock, Cambria's successor in interest to the mineral rights of the subject property, was not entitled to conduct surface mining operations on the property without first obtaining Graham's consent to do so. Drydock filed a counterclaim, seeking, inter alia, a declaratory judgment that its right to conduct surface mining for coal on the property was inherent in its ownership of the mineral rights, and that it need not seek permission from anyone before conducting surface mining operations. The trial court granted partial summary judgment in favor of Drydock, finding that the Graham-Holmes agreement was void and, therefore, Graham had no standing to assert his claim. The case proceeded on the remaining claims asserted in Drydock's counterclaim.
On appeal, we reversed the trial court's grant of partial summary judgment in favor of Drydock. Graham v. Drydock Coal Co. (Nov. 17, 1993), Athens App. No. 93CA1567, unreported [hereinafter Graham 1]. We noted that the trial court had mistakenly assumed that the Graham-Holmes agreement attempted to transfer the mineral rights in the property to Graham, and that it was void because Drydock clearly owned those rights. We recognized that the agreement merely purported to transfer the right to conduct surface mining on the property to Graham. We found that, so long as the Holmes possessed such a right, they could validly transfer it to Graham. If, on the other hand, Drydock's ownership of the mineral rights gave it the right to surface mine for the coal, then the Holmes had no interest to convey and the Graham-Holmes agreement was void. We remanded the case for determination of whether the 1955 and 1962 deeds reserved the right of the holder of the mineral estate to surface mine for the coal on the subject property. Drydock did not appeal our decision in Graham I.
On remand, the trial court, relying on Skivolocki v. East Ohio GasCo. (1974), 38 Ohio St.2d 244, 313 N.E.2d 374, found that the 1955 and 1962 deeds did not reserve the right of the holder of the mineral estate to surface mine the coal. In Skivolocki, the Supreme Court of Ohio held that a severed mineral estate does not carry an implicit right to strip mine for coal. Id. at paragraph two of the syllabus. Furthermore, the Skivolocki court held that "language peculiarly applicable to deep mining techniques, does not grant the right to remove coal by strip mining methods." Id. at paragraph three of the syllabus.
We again reversed the trial court, finding that the language in the 1955 and 1962 deeds was sufficient to reserve the right of the holder of the mineral estate to remove the coal by surface mining. Graham v.Drydock Coal Co. (Dec. 29, 1994), Athens App. No. 93CA1599, unreported [hereinafter Graham II]. The deed at issue in Skivolocki was written long before surface mining techniques were developed. We reasoned that by 1955, the year of the first deed from Cambria to Helen Holmes, the term "mining" had come to encompass surface mining as well as deep mining techniques.
On appeal, the Supreme Court of Ohio reversed and reinstated the judgment of the trial court. Graham v. Drydock Coal Co. (1996),76 Ohio St.3d 311, 667 N.E.2d 949 [hereinafter Graham Ill]. There, the court held, "A deed which severs a mineral estate from a surface estate, and which grants or reserves the right to use the surface incident to mining coal, in language peculiarly applicable to deep-mining techniques, whether drafted before or after the advent of strip mining, does not grant or reserve to the mineral owner the right to remove coal by stripmining methods." Id. at syllabus. The court stated that it was "unlikely that any purchaser of a surface estate would buy the surface of a tract subject to the right of the mineral owner to destroy the surface at its pleasure." Id. at 316, 667 N.E.2d at 954.
Subsequent to the decision of the Supreme Court of Ohio in Graham III, Drydock sought permission from Graham to surface mine its coal. Graham apparently never responded to this request. Instead, Graham incorporated Indybuck Coal Company in Indiana and transferred his rights under the Graham-Holmes agreement to Indybuck. Indybuck then brought suit in the United States District Court for the Southern District of Ohio seeking a declaratory judgment that Indybuck had no obligation to consent to Drydock's surface mining of the coal. Indybuck claimed diversity of citizenship as the basis for the federal court's jurisdiction. This suit was eventually dismissed.
On March 14, 1997, Drydock brought suit in the Athens County Court of Common Pleas, seeking a declaratory judgment that Graham could not unreasonably withhold consent to Drydock's use of surface mining techniques to retrieve the coal. Graham moved to dismiss, arguing that he was not a proper party defendant, that the case in federal court took precedence over the state court action, and that Drydock's claim was barred by res judicata. In response, Drydock requested leave to file an amended complaint joining Indybuck and the Holmes as defendants, as well as asserting a cause of action for restraint of trade therein.
The trial court denied Graham's motion to dismiss and granted Drydock's motion for leave to amend its complaint. The court noted that the federal district court had dismissed Indybuck's complaint, essentially finding that the transfer of the Graham-Holmes agreement to Indybuck was a sham transaction to artificially create diversity of citizenship. Since Graham retained a significant interest in the Graham-Holmes agreement, the trial court found that Graham was a proper party-defendant. The trial court also found that res judicata was not a proper issue for determination when sought by a Civ.R. 12 (B) motion.
Drydock filed an amended complaint, joining Indybuck and the Holmes as defendants. Drydock again sought a declaratory judgment, seeking a determination that Graham could not unreasonably deny Drydock permission to surface mine the coal. Further, Drydock added a claim that the actions of Graham and the Holmes constituted restraint of trade, in violation of R.C. Chapter 1331.
Graham moved for summary judgment based on a wide variety of arguments, including the argument that Drydock's claims were barred by res judicata.
The trial court granted Graham's summary judgment motion, finding that Drydock's claims were barred by res judicata, and further finding that Graham had no duty to grant consent to Drydock for surface mining the coal on the subject real estate. Drydock had argued that the Graham-Holmes agreement was void, but the trial court found that the earlier litigation had determined that the agreement was valid, so this argument was barred by res judicata. The trial court also found that Drydock's restraint of trade claim was barred by res judicata, on the basis that Drydock could have, and should have, asserted this claim in the original litigation, but had failed to do so, and was barred from now doing so in the current action. Based on its decision granting Graham's motion for summary judgment, the trial court also sua sponte
granted summary judgment in favor of the Holmes.
Drydock filed a timely notice of appeal, and presents three assignments of error for our review.
 APPELLANT'S ASSIGNMENTS OF ERROR 1. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT THE "SURFACE LEASE FOR COAL" IS VALID. DRYDOCK COAL CO. v. GRAHAM (APRIL 29, 1999), ATHENS C.P. 97C1000 105, PP. 9.
 2. THE TRIAL COURT ERRED AS A MATTER OF LAW IN RULING THAT, AFTER A LANDOWNER DETERMINES TO PERMIT SURFACE MINING OF HIS PROPERTY, HE MAY GIVE THAT CONSENT EXCLUSIVELY TO A PARTY THAT HAS NO RIGHT TO THE COAL. DRYDOCK COAL CO. v. GRAHAM (APRIL 29, 1999), ATHENS C. P. 97C1000 105, PP. 9.
 3. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO DETERMINE WHETHER, A THIRD PARTY VESTED WITH A LANDOWNER'S RIGHT TO CONSENT TO SURFACE MINING, MAY UNREASONABLY WITHHOLD CONSENT FOR THE OWNER OF THE COAL UNDERLYING THAT PROPERTY TO ACCESS ITS COAL BY SURFACE MINING TECHNIQUES. DRYDOCK COAL CO. v. GRAHAM (APRIL 29, 1999), ATHENS C.P. 97C1000105, PP. 7-8.
 OPINION
Prior to addressing Drydock's stated assignments of error, we must determine whether or not its claims are barred by the doctrine of resjudicata, thereby rendering the remaining issues moot. Graham argues that we should dismiss the instant appeal because the trial court granted his motion for summary judgment on the basis of res judicata, and that Drydock has failed to appeal this portion of the trial court's decision. See, e.g., Lewallen v. Mentor Lagoons, Inc. (1993),85 Ohio App.3d 91, 619 N.E.2d 98 (failure to assign error to issue constitutes waiver). In its reply brief, Drydock argues that the trial court did not base its decision on res judicata, but rather, decided against Drydock on the merits. Regardless, Drydock argues that the validity of the Graham-Holmes agreement was never decided in the original litigation, so it cannot be barred by res judicata in the instant case.
The doctrine of res judicata encompasses both issue preclusion and claim preclusion. In the context of claim preclusion, the Supreme Court of Ohio has held, "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." (Emphasis added.) Grava v. Parkman Twp. (1995),73 Ohio St.3d 379, 653 N.E.2d 226, syllabus. Issue preclusion applies "where an issue is litigated that has been "actually and necessarily litigated and determined in the prior action."' Ameigh v. BaycliffsCorp. (1998), 81 Ohio St.3d 247, 249, 690 N.E.2d 872, 875, quotingKrahn v. Kinney (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058,1062. In addition, both issue preclusion and claim preclusion require that the parties in each litigation either be identical, or at least be in privity with one another. Id. at 249, 690 N.E.2d at 874.
Drydock contends that res judicata does not apply in the instant case because the previous litigation never settled the validity of the Graham- Holmes agreement. This argument, however, is based exclusively on the doctrine of issue preclusion and ignores the potential effect of claim preclusion on the instant case. Whether or not issue preclusion bars Drydock from challenging the validity of the Graham-Holmes agreement is irrelevant if Drydock's claims for relief in the instant case are barred by claim preclusion.
Drydock presents two claims for relief: that the Graham-Holmes agreement constitutes restraint of trade in violation of R.C. Chapter 1331; and that Graham and the Holmes may not unreasonably withhold consent to Drydock's request to conduct surface mining. Drydock's contention that the Graham-Holmes agreement is invalid is not itself a claim for relief, but rather an issue that Drydock argues in support of its other claims. Thus, we must initially determine whether Drydock's restraint of trade and reasonable consent claims are barred by the doctrine of claim preclusion under Grava, supra.
The trial court clearly held that Drydock's restraint of trade claim is barred by res judicata. Drydock has not assigned this portion of the trial court's decision as error, and, therefore, any error argued on this basis is waived. In any event, the trial court's holding on this issue was correct. The restraint of trade claim is based on the propriety of the Graham-Holmes agreement, which was executed prior to the original litigation. Drydock could have asserted its restraint of trade claim in the original litigation, and, therefore, it was required to do so. As a result, the restraint of trade claim is barred by resjudicata.
The trial court also found that Drydock's reasonable consent claim is barred by res judicata. Drydock argues that the trial court's statement is merely dicta because it is contained within a footnote. In its decision and judgment entry on Graham's motion for summary judgment, the trial court stated, "The Court finds that Drydock could, and should, have raised and fully litigated this claim in [the previous litigation] and that the doctrine of res judicata applies to bar litigation of the same herein." The court went on to explain that it addressed the merits of appellant's reasonable consent claim "for purposes of thoroughness." As this discussion is contained within a footnote to the trial court's decision, Drydock's contention that these statements are mere dicta is certainly reasonable. At the end of its decision, however, the court below stated, "In conclusion, the court holds that Drydock claims merit summary judgment dismissal because they are barred by the doctrine ofres judicata." Thus, by reading the trial court's decision in its entirety, it is clear that res judicata is the true basis for the grant of summary judgment on both of Drydock's claims by the court below. Contrary to Drydock's contention, it is the trial court's discussion of the merits of Drydock's complaint that is dicta, not its finding that Drydock's claim is barred by res judicata.
In its memorandum in opposition to Graham's motion for summary judgment, Drydock argued that it did not request permission to surface mine from Graham, and, therefore, Graham did not withhold his consent, until after the decision of the Supreme Court of Ohio in Graham III. As a result, Drydock argues that its reasonable consent claim was not ripe at the time of the previous litigation. The trial court, however, noted that the "nucleus of facts" on which Drydock bases its reasonable consent claim existed at the time Graham initiated the previous litigation in 1992, in which Drydock filed its counterclaim regarding its right to surface mine the coal on the subject property. We agree.
The previous litigation was primarily a declaratory judgment action seeking determination of the rights of the respective parties to conduct surface mining of the Holmes' surface estate. Drydock challenged the validity of the Graham-Holmes agreement and asserted that its ownership of the mineral estate gave it the implicit right to surface mine for coal. Drydock could have presented its reasonable consent argument at that time as an alternative to its other claims. This it failed to do.
Drydock's reasonable consent claim is based on the premise that once the Holmes entered into an agreement with any party to allow surface mining on their property, they were estopped from unreasonably denying Drydock the right to conduct surface mining. As the trial court noted, Drydock knew when it filed its counterclaim in the original litigation that neither Graham nor the Holmes had consented to Drydock's surface mining of the coal. Had Graham and the Holmes been willing to consent to surface mining on Drydock's terms in 1992, the original litigation would never have occurred. Thus, Drydock's reasonable consent claim is derived from the Graham-Holmes agreement and Drydock could have pursued this claim in the original litigation. We find that Drydock's reasonable consent claim is barred by res judicata because it arises "out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman, supra, at syllabus.
The trial court correctly found that Drydock's reasonable consent and restraint of trade claims are barred by res judicata. In addition, Drydock failed to assign as error the trial court's finding on the issue of res judicata, thus waiving this issue on appeal. Appellant's assignments of error are moot and are, therefore, OVERRULED. The judgment of the Athens County Court of Common Pleas is AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Kline, P.J.: Concur in Judgment and Opinion.
 _____________________ David T. Evans, Judge
[1] Defendant-Appellee James F. Graham is the sole shareholder of Defendant-Appellee Indybuck Coal Company, an Indiana corporation. These two appellees have virtually identical interests in the instant appeal. For the sake of simplicity, we shall refer to them collectively as "Graham."
[2] Ohio courts have long recognized the validity of deeds dividing a tract of land into separate surface and mineral estates. See, e.g.,Gill v. Fletcher (1906), 74 Ohio St. 295, 78 N.E. 433.