[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} On September 11, 1996, plaintiff, Nicholas A. Hubbell, was a passenger in an automobile negligently driven into a pothole by Chris Ross. As plaintiff and Ross attempted to free the automobile from the pothole, plaintiff sustained serious injuries to his left leg.
 {¶ 2} At the time of the accident, plaintiff was insured pursuant to the underinsured motorist ("UIM") provision in his mother's automobile policy issued by Nationwide Mutual Insurance Company ("Nationwide Mutual"). On November 19, 1998, plaintiff and his mother entered into a damages stipulation with Nationwide Mutual wherein they agreed that, in the underlying action against Ross, only the issue of liability would be tried to the jury. The parties further agreed that Nationwide Mutual would pay the maximum limits of the policy, $87,500, only if plaintiff was found to be less than 51 percent negligent and that any payment made by Ross or his insurer would be set off from Nationwide Mutual's payment obligation. On February 18, 1999, a jury returned a verdict for plaintiff, finding Ross 80 percent negligent and plaintiff 20 percent negligent. The trial court, on February 23, 1999, entered judgment for plaintiff for $87,500. With Nationwide Mutual's consent, plaintiff settled his claim against Ross for his policy limit of $12,500, in exchange for a full and final release of all claims he had against him. Thereafter, Nationwide Mutual paid its limits of UIM coverage. On March 29, 1999, plaintiff signed a "Release and Trust Agreement," which stated, in relevant part:
 {¶ 3} "The undersigned * * * do[es] hereby and for [his] heirs, executors, administrators, successors, and assigns release, acquit, and forever discharges Nationwide Mutual Insurance Company (`Nationwide'), their agents, servants, employees, successors, parent corporations, subsidiary corporations, and insurers, from any claims, actions, causes of actions, demands, rights, damage, costs, loss of services, expenses, compensation whatsoever, which the undersigned now has or which may hereinafter accrue on account of or in any way growing out of the Medical Payments coverage and/or Uninsured/Underinsured Motorist Coverage of Nationwide's automobile insurance policy number 91 34 H 800 850, issued by Nationwide to [plaintiff's mother], from any and all known and unknown, foreseen and unforeseen bodily injuries, personal injuries, medical expenses, and the consequences thereof resulting or to result from the accident, casualty, or event which occurred on or about the 11th day of September, 1996, at or near 1476 Oakland Park, in the City of Columbus, County of Franklin, State of Ohio.
 {¶ 4} "It is further understood and agreed that this release and trust agreement includes all claims asserted by or which could have been asserted by Nicholas A. Hubbell against Nationwide in the law suit entitled Nicholas A. Hubbell, Plaintiff vs. Nationwide Insurance Company, et al., Defendants, assigned case number 97CVC09 8620 now pending in the Franklin County Court of Common Pleas, Ohio, and that a satisfaction of judgment shall be filed contemporaneously with the execution of this release.
 {¶ 5} "It is further understood and agreed that the undersigned will release and discharge Nationwide, its parent companies, subsidiary companies, insurers, agents, servants, employees, successors, and assigns from any and all claims, liability, and expense, including attorneys fees, for any claim or demand of any party, and any claim or demand of any third party, including those claiming consortium of any type or those claiming subrogation rights arising out of payments made to the undersigned, individually, in a representative capacity, or on behalf of the undersigned as a result of the occurrence set forth herein."
 {¶ 6} After the Ohio Supreme Court decided Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660, plaintiff filed a declararatory judgment action in the Franklin County Court of Common Pleas seeking a declaration that he was entitled to UIM coverage under both a commercial general liability policy and a commercial automobile liability policy issued by defendant Federal Insurance Company ("Federal") to Ariel Corporation, plaintiff's father's employer. Plaintiff subsequently amended his complaint to include claims for UIM coverage under a commercial automobile liability policy issued by defendant Nationwide Property and Casualty Insurance Company ("Nationwide Property") to North Central Insulation, plaintiff's stepfather's employer, and under a homeowner's liability policy issued by defendant Nationwide Mutual Fire Insurance Company ("Nationwide Fire") to plaintiff's mother.
 {¶ 7} Plaintiff and Federal filed cross-motions for partial summary judgment. By judgment entry filed November 9, 2001, the trial court granted Federal's motion for partial summary judgment, finding that plaintiff was not an insured under the commercial general liability policy and, thus, was not entitled to UIM coverage. The court denied plaintiff's motion for partial summary judgment relative to the commercial automobile liability policy, finding that genuine issues of material fact remained as to whether plaintiff was an insured under that policy for purposes of UIM coverage.
 {¶ 8} Plaintiff filed a motion for partial summary judgment against Nationwide Property and Nationwide Fire. Nationwide Property and Nationwide Fire filed a joint cross-motion for partial summary judgment. On August 21, 2002, the trial court granted summary judgment for Nationwide Property and Nationwide Fire and denied summary judgment for plaintiff. Therein, the court determined that plaintiff was an insured under the Nationwide Fire homeowner's liability policy; however, the court made no express finding regarding plaintiff's status as an insured under the Nationwide Property commercial automobile liability policy. The court concluded that plaintiff was not entitled to UIM coverage under either policy, however, because his claims were barred by the doctrine of res judicata as well as by the terms of the release and trust agreement executed by plaintiff on March 29, 1999. The court journalized its decision on September 4, 2002.
 {¶ 9} Federal filed a motion for summary judgment as to plaintiff's claims under the commercial automobile liability policy, asserting that even if plaintiff is an insured under the terms of that policy, he was not entitled to recover UIM benefits under the policy, as he failed to comply with two policy provisions. Specifically, Federal asserted that it was never notified of the lawsuit plaintiff filed against Ross. Federal argued that plaintiff's failure to notify it of that claim breached the requirement of "prompt notice" of the filing of a lawsuit. Federal further argued that plaintiff, by settling with and releasing Ross from liability without notifying them, had failed to protect their subrogation rights, thereby materially beaching the policy requirement that plaintiff not impair its subrogation rights.
 {¶ 10} By decision filed August 21, 2002, the trial court granted Federal's summary judgment motion. A judgment entry journalizing the court's decision was filed September 5, 2002.
 {¶ 11} Plaintiff has timely appealed the trial court's judgments, asserting the following four assignments of error:
 {¶ 12} "I. The trial court erred in finding that plaintiff/appellant's signing a release and trust agreement as to Nationwide Mutual Insurance Company bars plaintiff/appellant's claims against defendants/appellees Nationwide Property and Casualty and Nationwide Fire.
 {¶ 13} "II. The trial court erred to the prejudice of plaintiff/appellant in finding that a judgment entered into between plaintiff/appellant Nicholas A. Hubbell and Nationwide Mutual Insurance Company is binding and is res judicata as to plaintiff/appellant's claims against defendants/appellee Nationwide Property and Casualty and Nationwide Fire.
 {¶ 14} "III. The trial court erred to the prejudice of plaintiff/appellant in finding that notice and subrogation clauses from the general conditions portion of defendant/appellee Federal Insurance's policy are applicable to underinsured motorist coverage imposed by operation of law.
 {¶ 15} "IV. The trial court erred in finding that plaintiff/appellant breached an enforceable right of subrogation such that it should preclude any recovery under plaintiff/appellant's insurance contract with defendant/appellee Federal Insurance Company for underinsured motorist benefits.
 {¶ 16} An appellate court's review of a trial court's disposition of a summary judgment motion is de novo. See, e.g., Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390; and Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Accordingly, in order to determine whether summary judgment was appropriate, an appellate court must review the record independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. In determining whether a trial court properly granted a summary judgment motion, an appellate court must review the standard for granting summary judgment set forth in Civ.R. 56, as well as the applicable law.
 {¶ 17} Civ.R. 56(C) provides, in relevant part, as follows:
 {¶ 18} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
 {¶ 19} Thus, summary judgment is appropriate only where the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-430.
 {¶ 20} As plaintiff's first and second assignments of error are interrelated, we will address them jointly. By his first assignment of error, plaintiff contends that the trial court erred in finding that plaintiff's execution of the release in favor of Nationwide Mutual barred his claims for UIM benefits against Nationwide Property and Nationwide Fire. By his second assignment of error, plaintiff argues that the trial court erred in finding that his claims for UIM coverage under the policies issued by Nationwide Property and Nationwide Fire are barred by the doctrine of res judicata.
 {¶ 21} Initially, we note that at oral argument plaintiff withdrew the portion of these assignments of error pertaining to the Nationwide Fire homeowner's liability policy. As such, we will consider plaintiff's argument as it relates to his claims against Nationwide Property only.
 {¶ 22} The trial court determined that plaintiff's claims against Nationwide Property are barred by the doctrine of res judicata. A determination as to whether the doctrine of res judicata applies is a matter of law which an appellate court must resolve without deference to the trial court's decision. Payne v. Cartee (1996), 111 Ohio App.3d 580,586. Accordingly, this court must conduct a de novo review of the res judicata issue in order to resolve these assignments of error.
 {¶ 23} In Ameigh v. Baycliffs Corp. (1998), 81 Ohio St.3d 247, the Ohio Supreme Court stated that "in order for res judicata to apply, a valid, final judgment must have been rendered upon the merits and an identity of parties or their privies must exist." Id. at 249, citing Whitehead v. Genl. Tel. Co. (1969), 20 Ohio St.2d 108, paragraph one of the syllabus, modified in part on other grounds in Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 382. The trial court determined that plaintiff's claims for UIM benefits under the Nationwide Property policy are barred by the doctrine of res judicata because a valid final judgment was rendered as to "the Nationwide defendants" when the verdict for $87,500 was entered and "Nationwide" paid plaintiff "its" limit of UIM coverage. According to the trial court, because a final judgment had already been rendered in that action, plaintiff could not assert additional claims for UIM benefits against "the Nationwide defendants" for the same damages he sustained in the accident which were the subject of that previous action.
 {¶ 24} It is clear from a review of the trial court's decision and, in particular, its use of the terms "Nationwide" and "Nationwide defendants," that the trial court considered Nationwide Mutual and Nationwide Property as either the same parties or as parties in privity with one another for purposes of res judicata. Our review of the record reveals, however, that no evidence of the type delineated in Civ.R. 56(C) was submitted by either party which would support such a finding. Indeed, no evidence was presented by either party with regard to whether a corporate relationship of any kind exists between Nationwide Mutual and Nationwide Property. As such, a genuine issue of fact exists as to whether Nationwide Mutual and Nationwide Property are the same parties or are in privity with one another such that the judgment involving Nationwide Mutual precludes plaintiff's claim for UIM benefits under the commercial automobile liability policy issued by Nationwide Property. Therefore, the trial court improperly granted summary judgment on the basis of res judicata.
 {¶ 25} A similar analysis compels a similar conclusion with regard to the trial court's finding that plaintiff's claims against Nationwide Property are barred by the terms of the release and trust agreement executed at the conclusion of the action involving the Nationwide Mutual policy. Relying on language in the agreement which states that the agreement includes all claims which were asserted, or could have been asserted, by plaintiff against "Nationwide," the trial court found that the agreement precludes plaintiff from asserting additional claims for UIM benefits against Nationwide Property. It is clear from a review of the trial court's decision that the court considered the use of the name "Nationwide" in the agreement to encompass other entities using that name. However, as noted previously, no evidence was presented by either party regarding the existence of any type of corporate relationship between Nationwide Mutual and Nationwide Property. As such, a genuine issue of fact exists as to whether Nationwide Mutual and Nationwide Property are corporately related such that the release and trust agreement executed between plaintiff and Nationwide Mutual precludes plaintiff's claim for UIM benefits under the commercial automobile liability policy issued by Nationwide Property. Therefore, the trial court improperly granted summary judgment on that basis, and plaintiff's first and second assignments are error are well-taken.
 {¶ 26} By his third assignment of error, plaintiff contends that the trial court erred in finding that notice and subrogation clauses in the general conditions section of the Federal commercial general liability policy apply to UIM coverage imposed by operation of law. A review of the trial court's decision granting Federal's motion for summary judgment reveals that the trial court did not consider any issues with regard to the commercial general liability policy. This is so because the trial court had earlier determined that plaintiff was not an insured under that policy and, thus, had no claim to UIM benefits. Plaintiff admitted at oral argument that he did not appeal the trial court's judgment. He further admitted that the notice and subrogation provisions to which he refers are contained in the UIM portion of the commercial automobile policy, not the commercial general liability policy, and, as such, there has been no finding by the trial court that notice and subrogation provisions found in the general conditions section of a commercial general liability policy apply to UIM coverage that arises through operation of law. Consequently, plaintiff withdrew his arguments under the third assignment of error; thus, plaintiff's third assignment of error is moot.
 {¶ 27} Plaintiff contends in his fourth assignment of error that the trial court erred in finding that plaintiff breached an enforceable right of subrogation which precluded any recovery for UIM benefits under the UIM portion of the Federal commercial automobile liability policy. The pertinent policy language provides:
 {¶ 28} "OHIO UNINSURED MOTORISTS COVERAGE — BODILY INJURY
 {¶ 29} "* * *
 {¶ 30} "E. CHANGES IN CONDITIONS
 {¶ 31} "* * *
 {¶ 32} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 {¶ 33} "a. Promptly notify the police if a hit-and-run driver is involved, and
 {¶ 34} "b. Promptly send us copies of the legal papers if a `suit' is brought.
 {¶ 35} "c. A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle.' "
 {¶ 36} The trial court found that no evidence had been presented to establish that plaintiff ever provided notice to Federal of the lawsuit filed against Ross, the subsequent settlement reached with Ross, or his release of Ross from all claims he possessed against him. The court further found that it was undisputed that as a result of the release, no viable claims remained against Ross. Based upon these findings, the trial court determined that plaintiff had breached the notice and subrogation provisions contained in the UIM portion of the commercial automobile liability policy and, thus, was precluded from recovering UIM benefits under the policy.
 {¶ 37} After the trial court rendered its decision and the appellate briefs were filed in this court, but prior to the case being argued, the Ohio Supreme Court decided Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186, 2002-Ohio-7217, which like the present case, involved the question of whether an UIM coverage provider may be released from its obligation to provide coverage due to the failure of a claimant to promptly notify the insurer of a potential claim or to protect the insurer's subrogation rights. At oral argument, plaintiff requested that this court remand the case to the trial court in light of the Ferrando decision. Because the trial court rendered its decision without the guidance provided by Ferrando, we agree that the case must be remanded for further proceedings consistent with that opinion.
 {¶ 38} Upon remand, the court must adhere to the requirements set forth in Ferrando with respect to both the notice-of-claim provision and the subrogation-related provision. Pursuant to Ferrando, a court must determine whether the "prompt" notice (notice-of-claim) and subrogation-related provisions in a policy were breached and, if so, the effect of such breach. In performing such assessment as to each, a two-step inquiry must be made. The first step is to decide whether a breach of the challenged provision actually occurred. The second step is to determine, if the provision was breached, whether the insurer was prejudiced so that UIM coverage was forfeited. Id. at ¶ 89. In late-notice cases, the court must first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice "`within a reasonable time in light of all of the surrounding facts and circumstances.'" Id. at ¶ 90, quoting Ruby v. Midwestern Indem. Co. (1988), 40 Ohio St.3d 159, syllabus. If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precluded. If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut. Id.
 {¶ 39} In cases involving an alleged breach of a subrogation-related provision, the first step as delineated in Ferrando is to determine whether the provision actually was breached. If it was not breached, the inquiry ends, and UIM coverage must be provided. Id. at ¶ 91, citing McDonald v. Republic-Franklin Ins. Co. (1989),45 Ohio St.3d 27, paragraphs two and three of the syllabus, and Fulmer v. Insura Prop. Cas. Co. (2002), 94 Ohio St.3d 85, paragraph one of the syllabus. If the subrogation-related clause was breached, the second step of the inquiry is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut. Id.
 {¶ 40} Applying Ferrando to the instant case, with regard to the notice-of-claim provision, we do not agree with the trial court's finding that plaintiff never notified Federal of the claim he filed against Ross. Federal was notified of the claim at the time plaintiff filed the complaint for declaratory judgment. Even though that notification was made several years after plaintiff filed the lawsuit against Ross, it is not clear whether the notice-of-claim provision was breached. The Ohio Supreme Court has held that a requirement of "prompt" notification in an insurance policy "requires notice within a reasonable time in light of all the surrounding facts and circumstances." Ruby, supra, at syllabus; see, also, id. citing Ruby. In Ferrando, the court declined to establish a rule that a delay in notice of a particular length of time is unreasonable in all cases. Id. at ¶ 93. Because the court improperly determined that plaintiff never provided notice of the claim to Federal, we must remand the matter for the trial court to consider, pursuant to the standards outlined in Ferrando, whether plaintiff's notice to Federal of the claim, via the filing of the declaratory judgment action, was reasonable in light of all the surrounding facts and circumstances, and if not, whether Federal was prejudiced by the delay in notice.
 {¶ 41} Accordingly, if upon remand, the trial court determines that the notice of claim was reasonably given, then no breach of the notice-of-claim provision occurred, and Federal's obligation to provide coverage is not excused pursuant to that provision. However, if the trial court determines that the notice of claim was not reasonably given, then a breach of the policy did occur, and the next step is for the trial court to determine, by considering various conditions as they existed and in accordance with Ferrando, whether Federal was prejudiced by that breach. Should the trial court determine that there was no breach of the notice-of-claim provision or that there was no prejudice to Federal as a result of such a breach, the trial court must then follow the same two-step inquiry regarding the subrogation provision. Accordingly, plaintiff's fourth assignment of error is well-taken.
 {¶ 42} For the foregoing reasons, plaintiff's first, second and fourth assignments of error are sustained and his third assignment of error is moot. Accordingly, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
McCORMAC and BOWMAN, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.